CASE 16—PETITION EQUITY—JANUARY 12.

# Wedekind, &c., v. Hallenberg, &c.

# Komp's Ex'r v. Same.

### APPEALS FROM LOUISVILLE LAW AND EQUITY COURT.

CONSTRUCTION .OF DEVISE.—The law favors that construction of a will which will render estates vested and not contingent. Therefore, an estate devised vests at once upon the testator's death, although the

possession be postponed, if it is apparent, from the entire will, that the postponement of payment or possession is merely for the convenience of the estate.

A testator, by his will, gave to his sister D., the sum of $500 a year, to be paid by his executors to her annually, until July 1, 1882; and if she should die before that time, this annuity to be paid to her daughter M. On the 1st day of July, 1882, if D. should be still living, the executors were to set apart $5,000, and invest the same in mortgage notes, the interest to be paid to D. as long as she lived. Upon her death, the executors were to invest $3,000 of said sum in real estate for M., "the title to the same to be made to her with a restriction that she shall not have power to sell or encumber the same in any way, but may rent, use or occupy the same, and upon her death, to descend to her heirs." Said investment was not to be made in any event until after July 1, 1882. M. died prior to that time, leaving a child which died in infancy. D. died in 1885. There are three sets of claimants to the estate devised to M.—the heirs of the testator, the brothers and sisters of M., and the heirs of the father of M.'s child, the father having survived the child. *Held—*

1, The devise to M. vested upon the testators's death, it being apparent from the entire will that the enjoyment of it was postponed merely for the convenience of the estate.

2. M. took the fee, and not merely a life estate with remainder to her children, the words, "and upon her death to descend to her heirs" being words of inheritance, and not words of purchase. Therefore, upon her death her child took the estate as her heir, and not under the will, and the child dying in infancy, the estate descended, under the statute, to the brothers and sisters of M.

L. C. WOOLFOLK and C. B. SEYMOUR for WEDEKIND.

1. The intention of the testator, to be gathered from the entire will, must govern its construction. The law favors that construction of a devise which will cause the interest to vest, and not to be contingent. (Williamson v. Williamson, 18, B. M., 374; Roberts v. Brinker, 4 Dana, 571; Grigsby v. Breckinridge, 12 B. M. 630.)
2. The word "heirs" is a word of limitation, describing the extent of the estate of the first taker. (Gen. Stat., chap. 63, sec. 7–10.)

BACON & STITES for KOMP'S EXECUTOR.

1. The law favors that construction that will give a vested rather than a contingent estate. (Grigsby v. Breckinridge, 12 B. M., 631; Fields v. Hallowell, &c., 12 B. M., 521; Arnold v. Arnold, 11 B. M., 92; Williamson v. Williamson, 18 B. M., 329; Chess' Appeal, 87 Pa. St,, 365; Herbert's Ex'r v. Post. 26 N. J. Eqty., 278; Kelso v. Dickey, 7

Searg. & Watts, 279; Vandyke v. Vandyke, 14 N. J. Eqty., 198; Peckham v. Gregory, 4 Hall, 396.)

O. A. WEHLE FOR APPELLEES.

When futurity is annexed to the substance of a gift, the legacy is contingent; if it is attached only to the payment it is vested at the testator's death. (Williams on Executors, vol. 2, p. 1052; Jarman on Wills, 453; Sewell v. Dee, 2 Salk., 415; Bruce v. Charlton, 13 Sim., 65; Willett v. Ruter, 84 Ky., 317; Allen v. Vanmeter, 1 Met., 264; Warner v. Durant, 76 N. Y., 133.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

Ernest Wedekind made his will in 1872, and died in August, 1873, unmarried and without issue. These appeals involve the right to the three thousand dollars named in the twelfth clause of his will, and which reads as follows :

"I give to my sister, Mrs. Diedrich Wedekind, the sum of five hundred dollars a year, and my executors, hereinafter named, are to pay the same to her annually until the first of July, 1882. If she dies before said first day of July, 1882, my executors, hereinafter named, are to pay said sum of five hundred dollars per annum to Mary Wedekind, provided she is unmarried ; and if said Mary is married, or does marry, then said annuity is to cease from the time of her marriage. On the first day of July, 1882, if the said Mrs. Diedrich Wedekind is still living, I direct my executors, hereinafter named, to set apart five thousand dollars, and invest the same in mortgage notes, interest payable semi-annually, and the proceeds thereof to be paid to her as long as she lives. If she marries, the said annuity is not to be paid to her, but the said five thousand dollars is to remain in the hands of my executors until her death. Upon

her death my executors, hereinafter named, are directed to invest three thousand dollars of said sum in real estate for said Mary Wedekind, the title to the same to be made to her with a restriction that she shall not have power to sell or encumber the same in any way, but may rent, use, or occupy the same, and upon her death to descend to her heirs.   The remaining two thousand dollars of said five thousand dollars shall be invested by my executors, hereinafter named, in real estate for Minna Wedekind, sister of said Mary Wedekind, the title to the same to be made to her with a restriction that she shall not have power to sell or encumber the same in any way, but may rent, use, and occupy the same, and upon her death to descend to her heirs.   Said investments are not to be made in any event until after July 1, 1882, and the annuity therein provided is to cease at that time, unless the said Diedrich Wedekind is living, and has remained unmarried."

She survived the testator, and also the first of July, 1882, and the five thousand dollars was, therefore, invested in notes as directed by the will, and the interest paid to her until her death in April, 1885, she having also received the annuity of five hundred bequeathed to her for the time from the testator's death until July 1, 1882.   Her daughter, Mary Wedekind, married John B. Komp in 1877, and died in 1878.   They had one child, Lulie, and she died in July, 1878.   The father died in 1881, all of his estate being devised by him to his executor, in trust for his children by a former wife.   Mary Komp left surviving her a brother and a sister, Frank and Minna Wedekind.   There are

three sets of claimants to the fund of three thousand dollars : First, The appellees, Hallenberg and others, who are heirs of Ernest Wedekind, claim that the devise of three thousand dollars to Mary was contin- gent upon her living until July 1, 1882 ; that it never vested by reason of her death prior to that time, but lapsed and became undevised estate.    Second, The devisees of John B. Komp assert that the devise took effect at Ernest Wedekind's death, Mary taking a life estate only in the fund; and that at her death it passed, *under the will*, to Lulie in fee, and at her death to her father, and then under his will to his children by the former marriage, who are appellants in one of these appeals.    Third, The appellants, Frank and Minna Wedekind, claim that the devise took effect upon the death of the testator, the period of enjoy- ment merely being postponed until Diedrich Wede- kind's death, that the directions in the will for invest- ment was an equitable conversion of the fund into real estate, and upon Mary Komp's death, it *descended* to her child, and upon the latter's death, she being an infant, and without issue, passed to her next of kin upon the mother's side.

The first question to be determined is whether the devise ever vested in Mary Wedekind.   If so, then secondly, did it pass to her child under the will or by descent ?

It is well settled that the law favors that construc- tion which will render estates vested, and not contin- gent.   The law so inclines because it is nearly always the intention of the testator that his bounty shall be transmitted to the family of the beneficiary.   If it be

doubtful whether a legacy be vested or contingent, the law treats it as vested. It is, however, a question of intention upon the part of the testator. If this be plain, we need look to no rules of construction. It is only where it does not appear or is doubtful, that resort is to be had to them. If the testator has annexed futurity to the substance of his bounty, and it is of the essence of the gift, then its vesting is suspended; but if it merely relate to the enjoyment or payment of it, then it vests *in presenti*, unless this be made to depend upon an event which may never happen. The legacy is to be regarded as vested or contingent, according as the time when it is to take effect is annexed to the enjoyment of the gift or the gift itself. If there be no substantive gift, and it is only implied from a direction to pay, then the devise is contingent, unless a contrary intention may be collected from the words or context, or the payment be postponed for the convenience of the property or estate, or to let in some other interest. (Williams on Executors, side p. 1069.)

*Prima facie*, it is to be presumed that a testator did not intend any estate disposed of by his will to lapse ; and slight circumstances will, therefore, be regarded as showing that he intended the right to it to vest in the donee, although the possession of it may be postponed.

In this instance, the testater was interested in some mercantile firms. He also owned real estate jointly with others, and his will, therefore, provided that his estate should not be settled or distributed under it, saving a few small annuities, until July 1, 1882. In fact, the first nine clauses of it relate to the continu-

ance of the mercantile business until that time, and the settlement of his estate.

It is contended that where the only legatory words consist in a direction to do something with a sum of money *in futuro* for the legatee's benefit, and the sum is not to be separated from the estate until that time, the legacy does not vest unless the legatee survives that period. If, however, this be done for the convenience of the estate, as appears in the case now in hand, and not by reason of any incapacity of the devisee to take, then the rule contended for does not control, as, indeed, no rule controls if the testator's intention be plain. (Vandyke v. Vanderpool, 14, N. J., Eq. 198.)

The seventeenth clause of the will disposed of the residuum of the testators's estate, and after providing in the succeeding clause for the sale, by his executors, of his real estate, he says: "The money arising from my estate, is to be held by my executors, hereinafter named, and invested by them in good mortgage notes bearing interest, the interest payable semi-annually until the first day of July, 1882; and at that time, or as soon thereafter as possible, all the legacies and specific devises above mentioned, shall be settled, and my estate wound up as far as practicable." The fund was to be separated from the balance of the estate at a certain time. It was not made to depend upon any uncertain event. The testator knew the first day of July, 1882, would come, and that Diedrich Wedekind would die; and it is perfectly certain that he directed his estate to be kept intact until the time named, for its benefit and convenience.

The testator disposed of his entire estate. This circumstance tends to show that he did not intend the disposition of any of it to be contingent, since this would have defeated his purpose. It was said in the case of Roberts' Executors v. Brinker, 4 Dana, 570: "*Prima facie*, it may be presumed that a testator did not intend that any interest bequeathed in his will should lie dormant or undisposed of after his death, or should ever lapse, therefore, a slight circumstance may be sufficient for showing that a legacy is vested, and not contingent."

In this instance, additional force is given to this fact, because it is evident the will was drawn by one skilled in such matters, and the devise to the testator's sister in Germany, under the eleventh clause of the will, expressly provides: "In the event of her death at any time either before or after the first day of July, 1882, said annuity is to cease, and the money herein directed to be set apart shall belong to my estate," showing that where he intended a devise in a certain event to lapse, he expressly said so; and this he did not do as to the one in question. The will abundantly shows that its draftsman knew how to express contingency in appropriate words. The fifteenth and sixteenth clauses of the will direct that on July 1, 1882, the sum of five thousand dollars each be set apart from his estate, and invested in real estate for Louisa and Rosa Buckel, they to have the use thereof, but no power to sell or incumber it. These devises, as to contingency, are quite similar to the one in question, and it can hardly be supposed that the testator intended the disposition of so much of his estate to be

contingent, and especially when he evidently intended
to dispose of all of it.  He, in the main, gave his
estate to his brothers and sisters and their descendants,
and all of the provisions of the will being considered,
it is manifest that he expected and intended, with one
exception, where he expressly provided otherwise, that
such portion so given was to remain in that particular
branch of the family.

Our conclusion is that the gift and enjoyment under
the clause of the will in question were not one and
the same ; that they were not both suspended until
1882, and that the testator did not *intend* the devise
to Mary to be contingent upon her surviving that
period, but that it vested upon the testator's death,
the enjoyment of it being postponed for the conven-
ience of the estate.

When the will was made, the conventional interest
law allowing ten per cent. was in force, and it is quite
likely that the testator regarded the annuity of five
hundred dollars a year, given by the clause in ques-
tion, as equivalent to the interest upon the five thou-
sand dollars ; and if so, its payment confirms our
view that the legacy was not contingent.  It having
vested in Mary Wedekind, then as the will provided
that the title to the land in which it was to be in-
vested should be made to her, but with the restriction
that she should not sell or incumber it, "and upon
her death to descend to her heirs," did her daughter
Lulie take as a purchaser under the will, or by descent
as the heir of her mother ?

It is contended that the expression " descend to her
heirs," is equivalent to a direction that it should, at

her death, go or pass to them. This must depend upon the sense in which it was used by the testator. It is to be gathered from the entire instrument. The words are those of inheritance. If the estate passed by devise and not by descent, then it goes to those who are not of the testator's blood. This fact does not, of course, authorize a court to make a will for the testator; but it may be considered in determining what was intended by the use of the language employed. Certainly the testator did not intend his bounty to pass to strangers, and as the will was drafted skillfully, if the testator intended that at the death of Mary his bounty should go to her children, why did he not say so ?

The tenth clause of the will gave an annuity to one of the brothers of the testator until July 1, 1882, or to his wife in the event of his death, and directed that at the time named, five thousand dollars should be invested for their benefit, and "after their death, the said five thousand dollars is to be paid to *the children* of my said brother Henry, share and share alike. If my said brother Henry and his wife, both die before the first day of July, 1882, the said five thousand dollars is not to be paid until said first day of July, 1882, at which time, if they both are dead, the said *children* shall be entitled to the same."

The clause last cited tends to show that the expression "descend to her heirs," used in the one in question was not employed by way of words of purchase or to express a devise, but merely that the testator expected and intended his bounty would, upon Mary's death, pass by descent to her heirs.

If he did not so intend, why did he use the words: "*descend to her heirs ?*" If he intended the estate should pass by purchase under 'the will, then the language imports what he did not mean. It seems to us they were used in a different sense and as words of inheritance only: that the testator intended to vest the fee in Mary subject to the restriction upon her right of alienation, and that if he had intended to limit her interest to a life estate, he would have said so in express terms, as he did in the same clause as to the interest of Diedrich Wedekind in the fund. Our conclusion is that Mary's child took the estate by descent and as the heir of her mother, and not as a purchaser under the will. The language employed does not bring the case within the operation of section 10, article 1, chapter 63, of the General Statutes. This being so, and the direction to invest the fund in real estate being an equitable conversion of it into that character of property, it, upon the death of Lulie, passed by virtue of section 9, of chapter 31, of the General Statutes, to the next of kin upon the side of her mother.

The judgment upon the appeal of John B. Komp's executor, etc., is affirmed, but reversed upon that of the appellants, Minna and Frank Wedekind, and cause remanded for further proceedings consistent with this opinion.