## South, et al. v. Mothershead, et al.

(Decided January 30, 1917.)

### Appeal from Bullitt Circuit Court.

1. Wills—Intention of Parties—Vested Estates.—While it is the primal rule in the construction of wills that the intention of the testator must prevail, the law favors vested estates, and the courts will not construe a devise to be contingent, unless the intention to create a contingency clearly appears.

2. Wills—Estoppel.—Where a devisee accepts a devise under a will which also devises land, previously conveyed by the testator to the devisee, to a third person, the devisee and those claiming under him are estopped from claiming said land, unless the devisee did not have sufficient mental capacity to make an election.

3. Wills—Scope and Mode of Review.—Where the capacity of a devisee, whose land was devised to another in a will which devised other lands to said devisee, to make an election is in issue, and there is ample evidence to support the chancellor's finding,

the court will not disturb that finding merely because the devisee was an epileptic and had been addicted to the use of morphine.

T. C. CARROLL, CHARLES CARROLL and C. P. BRADBURY for appellants.

J. E. COMBS for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

In 1906 Brinton Harris died, a resident of Bullitt county, leaving a last will which was regularly admitted to probate, and which is as follows:

"I, Brinton Harris, of Bullitt county, Ky., being of sound mind and disposing memory do make and publish this my last will and testament in manner as follows:

"1. After my death and after the payment of all my just debts and funeral expenses I hereby give and bequeath to my beloved wife, Zelpha E. Harris, for and during her natural life the home farm on which I now live, containing 90 acres more or less and in case that my son, David Harris, is living, I further direct that she shall provide for his support and she is to look after his wants and said home place is to be for the support of both of them and in case of the death of my wife before the death of my son, David Harris, then I direct that said home farm shall be under the control of Alfred Mothershead, for the sole use and benefit and support of my son, David Harris, and the said Alfred Mothershead is to take charge and control of my son, David Harris, and to see to his wants and provide for his welfare and then after the death of my wife and son, David Harris, I direct that the home farm of 90 acres, more or less, shall be for the exclusive use and benefit of my daughter, Gilley Lee Crenshaw, wife of Dr. H. F. Crenshaw, and under her control, and in addition to the benefit of the home farm for the support of my afflicted son, David Harris, the benefit of 30 acres more or less of bottom land on Salt River and about 20 acres of timber land on the hill that I have heretofore deeded to David Harris and to be under the control of Alfred Mothershead, after the death of my wife; and,

"2nd. I further provide that after the death of my son, David Harris, that the 30 acres more or less of bottom land of David Harris I give and bequeath to the aforesaid Alfred Mothershead to compensate him for all his trouble.

"3rd. And I further direct that during the natural life of my wife in addition to the use and control and benefit of the home place she shall have the exclusive use and control and benefit of the aforesaid 30 acres of bottom land for the support of David Harris as long as she lives.

"4th. I hereby also give to my wife, Zelpha E. Harris, $500.00 and its proceeds that is on it, now in the hands of Wm. L. Harris to do as she pleases with and to draw as she needs it for the sole use and benefit of my son, David Harris, and herself as long as they live. Also I give to her all of the personal property that I may own, with full power to do as she pleases with; she can divide it with the children or she may direct my executor to make sale of all of it and the proceeds of said sale, if any, to be paid to her for the benefit of herself and David Harris, if living.

"5th. I hereby give and bequeath to my son, Louis Harris, what is known as the Hessey tract of land containing 50 acres more or less, part bottom land and part hill timber land, and he knows the boundaries of same, as I have established the corners.

"6th. I hereby give and bequeath to my daughter, Gilley Lee Crenshaw, wife of Dr. H. F. Crenshaw, 50 acres more or less; 30 acres, more or less, of bottom land and 20 acres more or less of hill timber land known as the old Harris tract of land and in case that she dies and leaves no issue, no living children, then the aforesaid bequest is to descend to my legal heirs.

"7th. I direct that after my death the 40-acre tract of land known as the Hazel tract shall be equally divided between my son, Louis Harris, and Gilley Lee Crenshaw and to descend as I heretofore direct.

"9th. I hereby nominate and appoint Alfred Mothershead as my executor without bond being required of him. In testimony whereof witness my hand this the 19th day of June, 1901.

"BRINTON HARRIS.

"Witness:
		"JOHN W. HARRIS,
		"W. H. ELLABY."

The testator was survived by his widow, Zelpha E. Harris, two sons, David Harris and Louis S. Harris, and a daughter, Gilley Lee South, formerly Gilley Lee Crenshaw, by which name she is referred to in the will.

The son, David Harris, died in July, 1913, and the widow, Zelpha E. Harris, in January, 1915. Shortly after the widow's death, Gilley Lee South instituted this action to construe her father's will, making all interested parties defendants.

The lower court held, by its judgment, that Alfred Mothershead, under the second section of the will of Brinton Harris, acquired title to the 30 acres of bottom land described therein. From this judgment Gilley Lee South and Louis S. Harris have appealed.

(1) Two questions are presented for our decision, one, a question of law, and, the other, a question of fact. The first question is: Did testator devise to Alfred Mothershead the thirty acres of land, absolutely, or only contingently? It is appellant's contention that, under the familiar rule that the intention of the testator, as gathered from the instrument as a whole, must govern in the construction of his will, it is apparent that the testator did not devise this thirty acres of land to Mothershead, except upon the contingency that the devisee should render services to testator's son, David Harris, after the death of his mother, and that, as David Harris died before his mother, the contemplated services were never performed, and the contingency did not happen upon which the devise to Mothershead was made to depend.

It is true that it is apparent from the will that it was the intention of the testator, that, if his son, David Harris, survived his mother, both he and the land devised to him should be taken charge of, and the land operated for the sole use and benefit of David Harris, by Alfred Mothershead, and that the latter should have the thirty acres of land after the death of testator's widow and son, David, "to compensate him for all his trouble;" but did the testator make the devise to Mothershead contingent upon the rendition of such services? We think not. The purpose or reason which prompted the devise to Mothershead was, to compensate him for all the trouble he might experience in whatever services he might perform, but the intention to make the devise contingent upon the necessity for such services is not manifested. While it is the primal rule in the construction of wills that the intention of the testator shall prevail, it is also true that the law favors vested estates, and

will not construe them to be contingent, unless the intention of the testator requires such construction. Pearcy, etc. v. Greenwell, etc., 80 Ky. 616; Merc. Bank of N. Y. v. Ballard's Assn., 83 Ky. 481; Wedekind v. Hallenberg, etc., 88 Ky. 114. And the intention to create a contingency must clearly appear, for the courts will not construe the testator's words as importing a condition, if a different meaning can fairly be given to them. Pearcy, etc. v. Greenwell, *supra;* Likefield, etc. v. Likefield, 82 Ky. 589; 40 Cyc. 1684. Since it does not clearly appear from the will, that the testator intended to make the devise to Mothershead contingent upon the rendition of any services to David Harris, after his mother's death, we conclude the court did not err in holding the devise to be absolute.

2. Many years before the execution of his will, testator and wife had conveyed this thirty acres of bottom land, by deed of general warranty, to David Harris, but, as conceded by counsel for appellants, by reason of the other provisions made for him in the will, he would have been required to elect whether he would take under, or against the will, and, having accepted the other provisions, he could not claim the land against the will, and appellants, claiming through and under him, could not now do so, if David Harris had the mental capacity to make an election, which appellants insist he did not have.

David Harris was an epileptic and had been addicted to the use of morphine for many years before his father's death, at which time he was about thirty years of age. The evidence as to his mental capacity at that time, and thereafter, is conflicting. Appellants introduced four witnesses who testified, in effect, that David Harris did not have sufficient mental capacity to make an election; while seventeen or eighteen witnesses, testifying for appellees, stated that his mind was good, that he was capable of understanding his father's will, and competent to accept or reject its provisions, some of these witnesses saying that David Harris had told them that he was entirely satisfied with the way his father had fixed his business and that Mr. Mothershead was to have his land after his death. We would certainly not be justified, upon such a record, in reversing the finding of a chancellor upon a question of fact.

For the reasons indicated, the judgment is affirmed.