E. D. PLUMMER and RALPH E. COSTIGAN, Trustees of Estate of JOHN D. RICHARDSON, Appellants, v. EVALINA M. ROBERTS, STELLA G. OSING, JOHN D. ROBERTS, JOHN D. ROBERTS, Guardian *Ad Litem* for JESSE RICHARDSON ROBERTS, EVALINA ROBERTS, JESSIE ROBERTS, ED. C. ROBERTS, JESSE I. ROBERTS, Guardian *Ad Litem* for ED. C. ROBERTS, JR., MATT T. PLUMMER, E. D. PLUMMER, Executor of Estate of MAMIE PLUMMER, GEORGE R. DANIELS, NORA RIORDAN, MRS. HAL MOREHEAD, Guardian *Ad Litem* for SARAH MOREHEAD, MARTINA MARTIN, DORA MARTIN, JOHN W. PLUMMER and CHARLES MOLONY, Appellants; ESTELLE BROWN, WILLIE TRAVERS, LEE TRAVERS, JAMES A. DONOVAN, ONIE DONOVAN, FRED DONOVAN, and CHARLES DONOVAN, Respondents.

E. D. PLUMMER and RALPH E. COSTIGAN, Trustees of Estate of JOHN D. RICHARDSON, Respondents, v. EVALINA M. ROBERTS, JAMES A. DONOVAN, ONIE DONOVAN, STELLA G. OSING, JOHN D. ROBERTS, JOHN D. ROBERTS, Guardian *Ad Litem* for JESSE RICHARDSON ROBERTS, EVALINA ROBERTS, JESSIE ROBERTS, ED. C. ROBERTS, JESSE I. ROBERTS, Guardian *Ad Litem* for ED. C. ROBERTS, JR., MATT T. PLUMMER, Executor of Estate of MAMIE PLUMMER, GEORGE R. DANIELS, NORA RIORDAN, MRS. HAL MOREHEAD, Guardian *Ad Litem* for SARAH MOREHEAD, MARTINA MARTIN,

DORA MARTIN, JOHN W. PLUMMER and CHARLES MOLONY, Respondents; ESTELLE BROWN, WILLIE TRAVERS and LEE TRAVERS, Appellants.

Court en Banc, August 6, 1926.

1. **PERPETUITIES: Command of Law: Devise to Trustees.** The rule against perpetuities is not a rule of construction, but a peremptory command of the law, and in determining whether the provisions of a will violate the law against perpetuities the court does not consider whether the estate or interest may vest, but whether it must vest within the time prescribed by the rule.

2. ————: **Equitable Estate.** The rule against perpetuities is applicable to personal as well as real property, and to equitable as well as legal estates, and to interests in changeable funds.

3. ————: **Intention: Devise to Trustees of Stock of Mercantile Company.** It is presumed that the testator intended to dispose of his entire estate, and the law favors vested estates; and mere technical rules must yield to the testator's intention as gathered from the whole will. Where an aged testator, engaged for fifty years in building up a dry goods business, had accumulated an estate of six hundred thousand dollars, more than two-thirds of which consisted of stocks, deposits and undeclared dividends of a dry goods corporation, of which he was the principal owner, managing head and financial support, and having no wife or descendant, by his will vested the great bulk of his property in trustees, peculiarly fitted to manage the business, during the life of the present charter of the corporation and a renewal thereof or a reorganization thereof, unhampered by the legal or equitable claims of any person, but with the manifest purpose of extending his bounty to distant relatives and friends who were wholly unacquainted with the business, which would be endangered by a scattering of the corporate stock, and with the further manifest purpose that the earnings and the stock itself or the proceeds of its sale would be distributed, to the named beneficiaries in named proportions, "at any time the trustees may think it for the best interest of all concerned" and that they should enter upon the full enjoyment of their respective bequests at the earliest possible moment the conditions of the estate would permit, his aim was not to continue the business of the corporation in perpetuity, or to postpone the enjoyment of the property by the beneficiaries, but his chief intention was to benefit the beneficiaries of the trust, and to safeguard the property against unreasonable depreciation and to preserve its value for their use; and such being his intention it must control unless the will in terms violates the positive rule against perpetuities.

4. ————: **Continuing Trust at Discretion of Trustees.** Even if it be admitted that the will in one part shows an intention to keep the whole property intact as long as the trustees consider it for the best interest of all concerned, and that the trustees are vested with a full discretion to determine when a distribution of the estate will be made among the named beneficiaries, that discretion must be reasonably exercised in good faith, and in furtherance of the testator's manifest intention, as gathered from the four corners of the will, that the beneficiaries are to enter upon the full enjoyment of their respective bequests at the earliest possible moment the condition of the estate will permit, which is an intention inconsistent with a purpose to create a perpetual trust.

5. ————: **Gift of Dividends: Postponement of Title.** A gift of dividends is a present enjoyment in the corpus. A gift of the dividends and returns of stock so long as it is held by trustees is not a postponement of a vesting

of every interest until the trustees make distribution of the stock; it is only the enjoyment of the stock bequeathed that is postponed.

6. ———: **Dividends: Returns: Conditional Distribution: Reconciliation of Clauses: Investment Dependent upon Discretion of Trustees.** Where the will in one paragraph provides that "any dividends or returns from the sale or liquidation of corporate stock held by the trustees, if not needed for other purposes of this trust, may be distributed in partial payments," and the next paragraph provides that "the beneficiaries are to receive only the returns on their bequests when paid out by the trustees," and both paragraphs give to the beneficiaries the dividends and returns on the stock "in the proportion above stated," a distinction is to be drawn between dividends and returns, since dividends do not arise from "the sale or liquidation" of stock, and testator did not refer to dividends when he said in the last paragraph that "the beneficiaries are to receive only the returns on their bequests when paid out by the trustees," but intended by both paragraphs that the trustees should pay to the beneficiaries the dividends as they were received, and only vested in the trustees a discretion as to the time when payment of the returns from the stock by sale or liquidation should be made; and therefore there is not a postponement of a vesting of every interest of the beneficiaries in the stock, dependent upon the discretion of the trustees, but the beneficiaries are given a present interest in the dividends, which carries to them the stock earning the dividends.

7. ———: **Discretion of Trustees: Control.** Where the discretion invested by the will in trustees is not without limitation, it cannot be exercised in such a way to defeat the substantial purposes of the trust, but it is always subservient to the main purpose disclosed by the will, and the trustees are under compulsion to carry out that purpose.

8. ———: ———: **Vesting Estate in Beneficiaries: Future Enjoyment: Contingent upon Distribution: For Benefit of Estate.** Where the testator provides for the ultimate enjoyment of his property by beneficiaries, and vests the legal title in trustees, seeking no aid from them or allowing them no discretion as to whom or in what proportions the property shall finally go, but asking their aid only in the business administration of the estate, which on account of its peculiar nature necessarily includes a discretion in them of determining the proper time when it can safely be distributed among the beneficiaries, and in the nature of things he cannot foresee when that time will arrive and he cannot therefore prudently fix upon a definite time when the beneficiaries will enter upon the full enjoyment of the property expressly bequeathed for their benefit, and the full enjoyment only is postponed, and that postponement is for the convenience and benefit of the estate, the legacy vests upon the death of the testator, and is not contingent until payment or distribution is made, and therefore the will does not violate the rule against perpetuities.

9. ———: ———: **Uncertain Persons: Dubious Event.** Bequests to named persons in existence when testator died, or to their specified heirs, to be paid in such time and in such manner as the condition of the estate in the judgment of the trustees will permit, are not limited to dubious or uncertain persons or upon a dubious or uncertain event, where the discretion as to the time of payment is not an unbridled one, and cannot be used to destroy the testator's main purpose that his estate is ultimately to be distributed in named proportions to such persons, and the words directing payment disconnect the time from the gift, in such manner as to leave the gift immediate, as if it stood alone.

10. **WILL: Oral Bequest: Part of Residuary Estate.** A clause in a will declaring that "I direct the trustees to distribute and dispose of the contents of my city and country residence to such persons and in such manner as I have instructed my trustees" constitutes no valid disposition of the

property therein mentioned, but such property where the will contains a general and unambiguous residuary clause is to be treated as a part of the residuary estate.

11. ————: **Residuary Clause: Oral Bequest: Particular and General Intention.** To prevent a partial intestacy, defeated legacies fall within a general and unambiguous residuary clause; and a special exception from a residuary bequest will not prevent the excepted property from going to residuary legatees, if the excepted legacies fail because of indefiniteness. At the very beginning of his will testator gave all of his property to trustees, thereby manifesting a general intention to die intestate as to none of it. He then directed the trustees to pay to certain named persons named amounts of money and property, and in the seventh clause directed his trustees to pay "the remainder of my estate, after these specific bequests mentioned herein are paid, to the following persons." By the eleventh clause he directed his trustees to distribute and dispose of the contents of his city and country residences "to such persons and in such manner as I have instructed my trustees," which was not a valid disposition of the contents. **Held,** that from the entire will two inferences pertaining to this particular property must be drawn: first, that testator did not intend that it be distributed as a part of his residuary estate, and, second, that he did not intend that it be treated as intestate property, and to hold that the contents of the residences go as intestate property to his next of kin would defeat one or the other of these particular intentions; and in such case, the particular intention must give way to the general intention, and the only way to carry out his general intention is to treat this particular property as a part of the residuary estate.

12. ————: **Residuary Estate: To Named Legatees in Aliquot Parts: Defeated Bequest: Lapsed Legacy: Intestacy.** The residuary legatees having been given definite aliquot parts of the residue by the residuary clause, which did not create a class or joint tenancy, the shares of the residuary legatees, in the absence of an expressed intention to the contrary, cannot be increased by a lapsed legacy, or by a defeated special bequest excepted out of the residue, although such defeated bequest and such lapsed legacy must be treated as a part of the residuary estate, but such defeated and lapsed shares go to testator's next of kin. The will, after making bequests to trustees for numerous legatees, by a general residuary clause gave to the trustees "the remainder of my estate to be paid to the following persons, in the proportions mentioned below," naming ten or twelve persons and naming the exact amount each was to have, and among them was Mamie Plummer, who survived testator, but died without husband or living descendants, and the bequest to her lapsed. The residuary legatees did not constitute a class, and the will did not create a joint tenancy. By the eleventh clause, testator directed his trustees to distribute and dispose of the contents of his residences "to such persons and in such manner as I have instructed my trustees," which was not a valid disposition of the contents, but a defeated legacy excepted out of the residue, and it is held that this particular property is nevertheless to be treated as a part of the residuary estate, as is the lapsed legacy to Mamie. The will contained no express provision disposing of property described in defeated or lapsed legacies. **Held,** that, the lapsed legacy of Mamie Plummer and the contents of the residences do not go to swell the aliquot parts of the surviving residuary legatees, and are not disposed of by said residuary clause, but as to them the testator died intestate, and they go to his next of kin.

Corpus Juris-Cyc. References: **Perpetuities,** 30 Cyc., p. 1475, n. 46; p. 1481, n. 76, 78; p. 1482, n. 85; p. 1496, n. 54, 56; p. 1498, n. 72. **Trusts,** 39 Cyc., p. 230, n. 28; p. 292, n. 97, 1; p. 295, n. 10. **Wills,** 40 Cyc., p. 1386, n. 85; p. 1389, n. 93; p. 1409, n. 4; p. 1431, n. 19; p. 1550, n. 48; p. 1564, n. 58, 59, 60; p. 1570 n. 93; p. 1650, n. 79, 81; p. 1732, n. 95, p. 1733, n. 96; p. 1759, n. 2; p. 1829, n. 12; p. 1945, n. 41; p. 1952, n. 59.

Appeal from Buchanan Circuit Court.—*Hon. William H. Utz,* Judge.

AFFIRMED *in part* and REVERSED *in part.*

*Emerson C. Harrington, Mytton & Parkinson, John E. Dolman* and *James T. Blair* for appellants Estelle Brown *et al.*

(1) It is well settled in Missouri and elsewhere that the rule against perpetuities is not a rule of construction, but is a rule established for the express purpose of defeating intention. Gray on Perpetuities (3 Ed.) sec. 629, p. 497; Andrews v. Lincoln, 95 Me. 541; Dime Savings Co. v. Watson, 254 Ill. 419; Bowerman v. Taylor, 126 Md. 203; Graham v. Whitledge, 99 Md. 275. (2) The first thing to be done is to ascertain the intent of the testator. In this process the will (or settlement) is to be construed from its four corners, including the provisions assailed as controverting the rule against perpetuities, "as if the rule did not exist, and then to the provision so construed the rule is to be remorselessly applied." Gray on Perpetuities (3 Ed.) sec. 629, p. 497; 21 R. C. L. 294, secs. 18, 19; Loud v. Trust Co., 298 Mo. 171; Deacon v. Trust Co., 271 Mo. 684. "Nor should it be overlooked, in the construction of a will or deed creating or attempting to create an interest or estate prohibited by the rule against perpetuities, that it should be construed just as all other deeds and instruments are construed. The real intention of the parties to the same as shown by the entire instrument should be the guiding star to its interpretation and the words of the instrument should be given their plain, ordinary and common meaning, unless the intention manifested is clearly to the contrary." Loud v. Trust Co., 298 Mo. 171; Deacon v. Trust Co., 271 Mo. 684; Barton v. Thaw, 246 Pa. St. 354; Graham v. Whitridge, 99 Md. 275; Cottman v. Grace, 112 N. Y. 308. (3) In the process of the ascertainment of the intention of the testator, the usual rules of interpretation apply. (a) In getting at the meaning of the will, the whole instrument is to be considered. Dickerson v. Dickerson, 211 Mo. 496; O'Day v. O'Day, 193 Mo. 62; Brooks v. Brooks, 187 Mo. 476; Chew v. Keller, 100 Mo. 362; Preston v. Brant, 96 Mo. 552; Allison v. Chaney, 63 Mo. 279; Turner v. Timberlake, 53 Mo. 371. (b) "The intention of the testator must govern and . . . when that appears, it overrides all rules and precedents, making its own laws." Taber v. Talcot, 101 Atl. (R. I.) 4; Sec. 555, R. S. 1919. To that intention all technical rules of construction must give way. Grace v. Perry, 197 Mo. 559; Suydam v. Thayer, 94 Mo. 55; Mead v. Jennings, 46 Mo. 93; Gibson v. Gibson, 280 Mo. 529; Tillerson v. Taylor, 282 Mo. 211;

Hartnett v. Langan, 282 Mo. 493; West v. Bailey, 196 Mo. 521; LaVauk v. McDonald, 190 S. W. 606; Lane v. Garrison, 239 S. W. 814; 1 Tiffany on Real Property, sec. 168, p. 578. (c) "It is equally well settled that evidence of surrounding circumstances, of the subject-matter of the devise and of the persons to be benefited thereby, is receivable in order to place the court so far as may be in the situation of the testator and looking from his standpoint to determine both the subject and objects of his bounty." Hull v. Stephens, 65 Mo. 677; Mockbee v. Grooms, 300 Mo. 474; Reinden v. Koppelman, 94 Mo. 338; Garth v. Garth, 139 Mo. 456; Murphy v. Carlin, 113 Mo. 112; Walton v. Drumtra, 152 Mo. 489. (4) This court has substantially defined a perpetuity, or estates invalid under the rule against perpetuities. Loud v. Union Trust Co., 298 Mo. 170; 21 R. C. L. pp. 287, 288, secs. 9, 10; 1 Perry on Trusts (6 Ed.) sec. 381, p. 618. (5) The rule is applicable to personal as well as real property; and to equitable as well as legal interests; and to interests in changeable funds. Loud v. Trust Co., 298 Mo. 170; Deacon v. Trust Co., 271 Mo. 696; Gray on Perpetuities (3 Ed.) p. 175, secs. 202, 202a. But "every interest in personal property which is provided to take effect *in futuro* is of an indestructible nature, and in that respect differs from certain remainders in realty under the common law. Schouler on Personal Property, sec. 149, p. 217. (6) The time limit fixed by the rule for the vesting of future interests, in case there is a precedent life estate, is for a life or lives in being and twenty-one years and the period of gestation. In case there is no precedent life estate and lives do not form a part of the time of suspension or postponement of the vesting of the future interest, the longest period of suspension permitted under the rule against perpetuities is twenty-one years and ten months, absolute. Barton v. Thaw, 246 Pa. St. 355; Andrews v. Lincoln, 95 Me. 545; Johnson's Estate, 185 Pa. 179; Johnson v. Preston, 226 Ill. 447; Cadell v. Palmer, 7 Bligh. 202; 1 Perry on Trusts (6 Ed.) sec. 380, p. 615; 1 Tiffany on Real Property (2 Ed.) sec. 182, p. 601; Williams on Real Property (6 Am. Ed.) 317; Goodwin on Real Property, 280; Foulke on Rule Against Perpetuities, sec. 340; Crawford v. Carlisle, 206 Ala. 387. (7) A perpetuity will not be tolerated when it is covered by a trust, than when it displays itself undisguised in the settlement of a legal estate. 1 Perry on Trusts (6 Ed.) sec. 382, p. 620; Fonda v. Fenfield, 56 Barb. 503; Johnson v. Holifield, 79 Ala. 424; Webster v. Wiggin, 19 R. L. 73, 20 L. R. A. 514; Crawford v. Carlisle, 206 Ala. 387. (8) In this case, in order that a gift may not be too remote and, therefore, void under the "rule against perpetuities," (a) the person to take must be so pointed out that he must be ascertained within the prescribed period, and (b) his interest must be one so given that it must vest within that period.

Authorities, supra; Stuart v. Cockrell, L. R. 5 Ch. 713; London S. W. Ry. v. Gomm, 20 Ch. D. 562; Dickerson v. Dickerson, 211 Mo. 490; Delassus v. Gatewood, 71 Mo. 376. An estate or interest is contingent when it is limited to take effect "either to a dubious or uncertain person or upon a dubious or uncertain event." Delassus v. Gatewood, 71 Mo. 376; Dickerson v. Dickerson, 211 Mo. 488; Emison v. Whittelsey, 55 Mo. 259; Maguire v. Moore, 108 Mo. 274. (9) In getting at the meaning of a will, the whole instrument is to be considered. Dickerson v. Dickerson, 211 Mo. 496. And technical rules must yield to intent. This applies to the presumption that testator intended to dispose of his whole estate. Tillerson v. Taylor, 282 Mo. 211. And to the favoring of the vesting of estates. Hartnett v. Langan, 282 Mo. 492; LaVank v. McDonald, 190 S. W. 606. And to all the rest of the technical rules sometimes employed. This must be true since the rules mentioned have no function to perform save to aid in ascertaining intent. They cannot be permitted to defeat intent. This would transform them into something other than rules of construction. And in this case, since there is no precedent estate, the rule in favor of vesting has no application. 1 Tiffany on Real Property, sec. 168, p. 578. (10) The general plan of the will shows beyond question an intent to keep the whole property intact as long as the trustees thought best; with respect to this the trustees are vested with full discretion. The will expressly so provides. The trustees are explicitly given "absolute control" for all purposes and no other vested or vendible interest is given anyone. The discretion of the trustee extends to a postponement of payment until beyond the time fixed by the rule against perpetuities; and a vesting before that time would be in the face of the clear intent of the testator with respect to all bequests, unless it be the monthly payments to Evalina M. Roberts and James A. and Onie Donovan. Kelley's Est., 253 Pa. St. 472; Hill on Trustees, p. 495; Ballantine v. Ballantine, 152 Fed. 781, 160 Fed. 927; Siedler v. Syms, 56 N. J. Eq., 275. (11) Under the provisions of the will which purport to dispose of "the remainder" after the deduction of all previously mentioned property (paragraph 7) the donees are to take only (a) "if living" at (b) an uncertain future time. The will is explicit on these points. The bequests are expressly made to depend upon the donees being alive at an uncertain future time. The conditions are conditions precedent to any vesting. Under all the authorities these bequests are contingent and not vested. (a) Delassus v. Gatewood, 71 Mo. 377; Emison v. Whittelsey, 55 Mo. 255; Dickerson v. Dickerson, 211 Mo. 488; Maguire v. Moore, 108 Mo. 274; Tevis v. Tevis, 259 Mo. 39; Dwyer v. Trust Co., 286 Mo. 486; Deacon v. Trust Co., 271 Mo. 689. (b) The above cases are in accord with the rule elsewhere. Matter of Buechner, 226 N. Y. 442; Hall v. Wiggin, 67 N. H. 91; Purdy v. Haight, 92 N. Y. 454; Oswald v. Givens,

1 Rich. Eq. Cas. 342; Kent v. Kent, 2 Dev. Eq. 367; Grissom v. Parrish, 1 Phip. Eq. 330; Grother's Estate, 237 Pa. St. 265; McGlessing's Estate, 37 Pa. Sup. Ct. 520; Gibson v. Seymour, 102 Ind. 486; In re Mifflin's Estate, 124 Atl. 132; Taber v. Talcott, 101 Atl. 2; McNair v. Sockriter, 201 N. W. 105; Cushman v. Goodman, 95 Me. 353; Wood v. Bullard, 151 Mass. 324; Horn v. Coleman, 1 Smale & G. 169; In re McFee (1910), Weekly Notes, 189, 79 L. *. Ch. N. E. 676; Taylor Executrix v. Meadows, 66 Ga. 238; Kelley's Estate, 253 Pa. St. 466; 30 Am. & Eng. Ency. Law (2 Ed.) 778.    (12) The directions to pay cash sums to named persons are mere directions to pay "at such a time as the conditions of this trust will permit," with discretion to make partial payments "if in their judgment, the trustees deem best." There is no gift of the sums independent of the direction to pay and of that direction, which constitutes the gift, if any, an indefinite future time is an essential part. The bequests are contingent.    (13) The testator's direction to the trustees to "hold for" named persons shares of stock, is to be read with the rest of the will in the light of testator's general intention. The closing paragraphs of the will put all the stock in "the absolute control of the trustees and their successors" and expressly provide that the "beneficiaries are to receive only the returns on their bequests when paid out by the trustees" and the trustees are "empowered in case of reorganization, or a continuance of the charter" of the company "to continue the stockholdings of the beneficiaries mentioned herein or their legal heirs" if the trustees think that best. These bequests of stock are contingent. The word "absolute" as herein used by the testator "is an emphatic term denoting full power unlimited by any condition." Underwood v. Cave, 176 Mo. 1.    (14) The rule is ̲at a gift which appears solely in a direction to pay, as in gifts in this case, is contingent. Here there is no intermediate estate to be let in; there is no independent gift and there are express contingencies upon which the directions to pay and to divide explicitly depend. The rule applies. Owen v. Eaton, 56 Mo. App. 569; Matter of Embree, 9 App. Div. 602; Leake v. Robinson, 2 Mer. 363; Watson v. Hayes, 5 Mylne & Craig, 126; Vaudny v. Geddes, 1 Russell & Mylne, 207; Batsford v. Kebbell, 3 Ves. 363; Newman v. Newman, 10 Simon, 51; Sansbury v. Read, 12 Ves. 78; Errington v. Chapman, 12 Ves. 24; Fidelity Trust Co. v. Tiffany, 260 S. W. 357.    (15) When parts of a will, which constitute parts of testator's general plan are void   der the rule against perpetuities, the whole fails. Loud v. Trust Co., 290 Mo. 185; Shepperd v. Fisher, 206 Mo. 246; Lockridge v. Mace, 109 Mo. 162.

*Thomas F. Ryan* and *Culver, Phillips & Voorhees* for respondents E. D. Plummer *et al.* and Evalina Roberts *et al.*

(1)    It is conceded that the rule against perpetuities is not a rule of construction but a peremptory command of the law; and in de-

termining whether or not the provisions of a will violate the law as to perpetuities, the court does not consider whether the estate or interest may vest, but whether it must vest within the limit of the rule. 2 Anderson on Wills, p. 1677. (2) But to these elementary principles must be added the additional rule that though the rule against perpetuities disregards intention, "yet in practice it is custatomary for the courts to bear in mind the principle that no man desires to die intestate, and if there are two possible constructions of a testament, one of which would permit effect being given to the whole will and the other which would result in part of the will being rendered void and a partial intestacy occurring, preference will be accorded to the construction which will uphold the will, and this applies to a part of the will as well as the whole." 21 R. C. L. 295; Gray on Perpetuities, sec. 633; 2 Alexander on Wills, p. 1679; 1 Perry on Trusts (3 Ed.) sec. 381. (3) "The rule against perpetuities has reference to the time within which the title vests, and has nothing to do with the postponement of the enjoyment. A vested interest does not necessarily include a right to the possession, and if an interest is vested it is not subject to the rule, however remote may be the time when it may come into possession." 21 R. C. L. 290, sec. 12; Gates v. Seibert, 157 Mo. 254; Gray v. Whittemore, 192 Mass. 367; Landers v. Brown, 300 Mo. 348. (a) A term for a thousand years is good, if it vests within the period. 30 Cyc. 1484. (b) "As far as the rule is concerned the mere postponement of the time of payment of a gift is not important." 21 R. C. L. 290, sec. 12. (c) "If the event upon which a contingent remainder is limited must happen, and the contingent becomes a vested remainder within the time allowed by the rule against perpetuities, the rule is not violated by the fact that the remainder so vested is not to be enjoyed until some future fixed time." 21 R. C. L. 290, sec. 12; 30 Cyc. 1482; 21 R. C. L. 297; Deacon v. Trust Co., 271 Mo. 669. (4) The bequests made in paragraph 4 are valid. (a) Because they are vested, and even if they were contingent they must vest within the period of the rule; (b) The bequests are vested and their payment is subject only to the debts and charges against the estate; (c) The postponement in payment being solely for the benefit of the estate and not for any reason personal to the legatees, the legacy must be held to be vested. (5) The bequests made in paragraph 5 of the will are valid. (a) The testator specifically gives the bequests to the trustee to hold for the persons named. It is an unconditional gift *in praesenti*. And even if it was contingent it must vest within the rule. (b) As the gifts were made to persons alive at the date of the testator's death, they must be held to have vested at once in the absence of an expression of an intention that the vesting shall be postponed. Silence of the testator upon that

point will raise a conclusive presumption that the interest in the gift is to vest on the death of the testator. Real Estate Co. v. Megaree, 280 Mo. 52. (c) The testator expressly gives to the legatees the entire income or dividends which the stock is to earn. If he had merely provided that the legatees were to receive the dividends, that alone would be a bequest of the stock itself. Schouler on Wills, sec. 507; Busby v. Busby, 114 N. W. 561; Hartson v. Elder, 36 Atl. 562; Hussey v. Sargent, 75 S. W. 215; Wilkinson v. Rossers Exec., 104 S. W. 1021; Provenchere's Appeal, 67 Pa. St. 463; Jennings v. Reed, 72 Atl. 939; 40 Cyc. 1550. "For example a bequest of the dividends arising on certain stocks, without a direct and express disposition of such stocks, carries the stock with it." 28 R. C. L. 246. (6) Paragraph 7 is valid. (a) Even if these bequests are contingent until the distribution of the estate (which we deny), all of them must vest within the lifetime of the legatees, all of whom were living at the death of the testator, or immediately upon the death of such legatee. (b) But the gifts are vested. The rule is that even though there be no words creating a gift except those directing payment or division in the future to persons if then living, and if not then to their surviving husband or wife and their children, still if it appears as in the case at bar, that the postponement is for the benefit of the estate and not because of any reason personal to the legatee, or where, as here, the income is, prior to distribution, given to the legatee named, the legacy vests immediately upon the death of the testator. The legatee takes a vested interest subject to be divested by his death prior to distribution, and, if there be a limitation over to his husband or wife and their children, immediately upon the death of the legatee they take a vested indefeasible estate. Robert v. Corning, 89 N. Y. 225; Collier's Will, 40 Mo. 321, 324; Deacon v. Trust Co., 271 Mo. 669; O'Hare v. Johnston, 273 Ill. 458; Newbury v. Hurman, 49 Conn. 130; Mettler v. Warner, 243 Ill. 600; 2 Alexander on Wills, sec. 996; Knight v. Pottgieser, 52 N. E. (Ill.) 935; Baker v. McLeod's Estate, 48 N. W. 657; McLaughlin v. Penney, 70 Pac. (Kan.) 344; Scofield v. Olcott, 11 N. E. 351; Wedekind v. Tallenberg, 10 S. W. (Ky.) 368; Van Dyke's Admr. v. Vanderpool's Admr., 14 N. J. Eq. 198; Brooklyn Trust Co. v. Kernan, 177 N. Y. Supp. 720; Bowditch v. Ayrault, 138 N. Y. 222; In re Est. Clark, 270 Mo. 351; Cropley v. Cooper, 86 U. S. 174. (7) Even if the bequests in any one paragraph are void the bequests in the remaining paragraphs are not thereby affected, because the bequests in each paragraph are distinct from and independent of the other, cover different property, are given to different legatees and there is no fact or circumstance to show that the testator would not have made the bequests in any one paragraph if he had known that the beneficiaries named in any other paragraph

would not receive the legacy provided for them. Mockbee v. Brooms, 300 Mo. 472; Sevier v. Woodson, 205 Mo. 216. (8) The bequest of the household goods being void, the property fell into the residuary estate and the court should decree that the proceeds from the household effects went to the residuary legatees and not to the heirs at law. 28 R. C. L. 340; Faust's Admr. v. Birner, 30 Mo. 414; Dozier v. Dozier, 183 Mo. 149; Young v. Robinson, 122 Mo. App. 195.

*T. F. Ryan* and *Culver, Phillips & Voorhees* for appellants E. D. Plummer *et al.*

(1) The court erred in holding and decreeing that the lapsed and void legacies went to the heirs at law of the testator, and not to the residuary legatees. (a) The intention of the testator controls. Sec. 555, R. S. 1919; 28 R. C. L. 211; Payne v. Reece, 297 Mo. 54; Barnes v. Maddox, 245 S. W. 208; Sandusky v. Sandusky, 261 Mo. 358. (b) The presumption is that the testator intended to dispose of his entire estate. 40 Cyc. 1564; Gillilan v. Gillilan, 278 Mo. 116; Gibens v. Ott, 222 Mo. 412. (c) In determining the intent of the testator, his relations to the beneficiaries should be considered. Schee v. Boone, 295 Mo. 212; Grace v. Perry, 197 Mo. 550. (d) The surviving residuary legatees take the whole of the residuary estate, where the testator so intended. 40 Cyc. 1569; Dozier v. Dozier, 183 Mo. 149; Payne v. Reece, 297 Mo. 54, 63.

*Emerson C. Harrington, Mytton & Parkinson, John E. Dolman* and *James T. Blair* for respondents Estelle Brown *et al.*

(1) If, for the purposes of the present question on this appeal of Plummer et al., the clause relied upon by them be treated as a residuary clause, and, for sake of argument, be conceived of as valid, then on that hypothesis, any lapsed bequest of a portion of the supposed residuum would go to Estelle Brown, Willie and Lee Travers, heirs at law and next of kin. Silcox v. Nelson, 24 Ga. 86; Stetson v. Eastman, 84 Me. 368; Hand v. Marcy, 28 N. J. Eq. 61; Burnet v. Burnet, 30 N. J. Eq. 599; Hard v. Ashley, 117 N. Y. 616; Matter of Hoffman, 201 N. Y. 255; Johnson v. Johnson, 32 Minn. 514; Worcester Trust Co. v. Turner, 210 Mass. 115; Vreeland v. Van Ryper, 17 N. J. Eq. 136; Lombard v. Boyden, 5 Allen, 251; Smith v. Haynes, 111 Mass. 347; Pest v. Berry, 189 Mass. 510; Ward v. Dodd, 41 N. J. Eq. 416; Bill v. Payne, 62 Conn. 140; Dorsey v. Dodson, 203 Ill. 36; Prison Assn. v. Russell, 103 Va. 569; Bagwell v. Dry, 1 P. Wms. 700; Page v. Page, 2 P. Wms. 488; Skrymsher v. Northcote, 1 Swanst. 570. (2) The language of the clause, if valid, would give the portions in common, and not jointly. Silcox et ux. v. Nel-

son, 24 Ga. 86; Frost v. Courtis, 167 Mass. 252; Lombard v. Boyden, 5 Allen, 251; Hand v. Marcy, 28 N. J. Eq. 61; Worcester T. Co. v. Turner, 210 Mass. 115; Stetson v. Eastman, 84 Me. 368.   (3)   Any inference arising from the fact that a will was made, that testator intended to dispose of all his property, does not affect the rules stated, supra.   Vreeland v. Van Ryper, 17 N. J. Eq. 136; Worcester v. Trust Co., 210 Mass. 115; Dorsey v. Dodson, 203 Ill. 36.   (4) No inference from the omission of an heir at law from the will could affect the applicability of the rule.   Nor would any explanation why the next of kin are not provided for affect it.   Bill v. Payne, 62 Conn. 140; Frost v. Courtis, 167 Mass. 252; Ward v. Dodd, 41 N. J. Eq. 416; Johnson v. Johnson, 32 Minn. 514.

ATWOOD, J.—The above cases present cross-appeals taken from the judgment of the circuit court in a suit to construe the will of John D. Richardson, deceased, instituted by E. D. Plummer and Ralph E. Costigan, trustees thereunder, against Evalina M. Roberts and others constituting the heirs at law of said deceased and the legatees named in said will.   E. D. Plummer is one of the trustees named in the will, and Ralph E. Costigan is the successor of H. L. Stevenson, the other trustee named in said will.   Estelle Brown, Willie Travers and Lee Travers are the niece and nephews respectively of the deceased and constitute his sole surviving next of kin and heirs at law.   The testator died on January 6, 1924.   He was then seventy-six years of age and left no surviving widow or descendants. Born in the State of Maryland, he came to St. Joseph, Missouri, a penniless lad nineteen years of age, and became one of its pioneer merchants.   For more than fifty years he was engaged in the dry goods business and at the time of his death he had accumulated an estate of the approximate value of $600,000.   Of this amount about $440,000 was represented by stock and undeclared dividends of the Richardson Dry Goods Company, a Missouri corporation located at St. Joseph, Missouri, in which he was the dominant spirit and held a controlling interest.   The broad issues joined necessitate a full statement of the contents of the will, pleadings and judgment.   The will as admitted to probate January 14, 1924, by the Probate Court of Buchanan County, Missouri, is as follows (except the serial numbering of paragraph groups which was adopted in the pleadings and judgment for convenient reference and is here inserted for the same purpose) :

"1.   I, John D. Richardson, resident of the city of St. Joseph, Missouri, being of sound mind and disposing memory, do make, publish and declare, this my last will and testament.

"My estate consisting of money, notes, stocks and bonds, and all other property owned by me, real, personal, or mixed, wherever

situated I give, devise and bequeath unto E. D. Plummer and H. L. Stevenson, of St. Joseph, Missouri, in trust for the following uses and purposes, to-wit:

"I direct that said trustees and their successors in trust, shall hold, manage, and control, and conserve the property herein devised and bequeathed to them, and I give unto said trustees and their successors in trust, full power and authority to sell and convey or otherwise dispose of any or all of said property, in such manner and upon terms as to them may seem proper for the fulfillment of this trust; to invest or reinvest all moneys that may come into their hands, in such manner as they may think best, and do further empower said trustees to close the trust hereby vested in them, and distribute said property or the proceeds thereof, among those entitled thereto under this will at any time they may think it for the best interest of all concerned, for them to do so.

"2. I direct that said trustees at my death shall pay any debts I may be owing, and to pay my funeral expenses,

"3. I direct my trustees to pay monthly to the following named persons in cash the amounts mentioned below during their lives and in addition to such other bequests as may be hereinafter made in their behalf.

"Evaline M. Roberts, of Easton, Maryland, the sum of one hundred dollars monthly. ·

"To James A. Donovan of St. Joseph, Missouri, one hundred and fifty dollars monthly.

"To Onie Donovan, widow of Charles Donovan, of St. Joseph, Missouri, the sum of one hundred dollars monthly.

"4. I direct my trustees at such a time as the conditions of this trust will permit, to pay to the following persons, the sum of money following their names, as below, or if in their judgment, the trustees deem best, they may make partial payments:

"To Evaline M. Roberts of Easton, Maryland, the sum of twenty-five hundred dollars.

"To Estelle Brown, Taylors Island, Maryland, daughter of my half sister, Aline Travers, deceased, the sum of ten thousand dollars.

"To Willie Travers, Taylors Island, Maryland, son of above half sister, the sum of five hundred dollars.

"To Lee Travers, Taylors Island, Maryland, son of deceased half sister, the sum of five hundred dollars.

"To Mrs. Stella G. Osing, No. 523 East Twenty-second Street, Baltimore, Maryland, the sum of ten thousand dollars.

"To John D. Roberts, No. 623 North Twenty-fifth Street, St. Joseph, Missouri, five thousand dollars. Also the house and lot where he resides at No. 623 North Twenty-fifth Street, St. Joseph, Missouri, also the vacant lot adjoining his residence on the south.

"To John D. Roberts to use as he may deem best for his minor son, Jess Richardson Roberts, five thousand dollars.

"To Evaline Roberts, wife of Jesse I. Roberts, five thousand dollars.

"To Jessie Roberts, daughter of Evaline Roberts, and Jess I. Roberts, five thousand dollars.

"To Ed. C. Roberts, of Galesburg, Illinois, five thousand dollars.

"To Ed. C. Roberts to use as he may see fit for his son Ed. C. Roberts, Jr., a minor, twenty-five hundred dollars.

"To Matt Plummer of the Richardson Dry Goods Company, St. Joseph, Missouri, twenty-five hundred dollars.

"To Mamie Plummer, sister of above, twenty-five hundred dollars.

"To James A. Donovan, of St. Joseph, Missouri, five thousand dollars.

"To Onie Donovan, widow of Charles T. Donovan, two thousand dollars.

"To Fred Donovan and to Charles Donovan, sons of above, two thousand dollars each.

"To George R. Daniels if in my employ at time of my death, the sum of four thousand dollars.

"To Nora Riordan, if in my employ at the time of my death, the sum of four thousand dollars.

"To Mrs. Hal Morehead, of Kansas City, Missouri, for such use as she may see fit for her daughter, Sarah Morehead, one thousand dollars.

"To Martina Martin and Dora Martin, of St. Joseph, Missouri, the sum of two thousand dollars each.

"To John W. Plummer of Talbot County, Maryland, the sum of two thousand dollars.

"To Rev. Charles Molony of Christ Episcopal Church the sum of three thousand dollars for his personal use.

"5. I direct my trustees mentioned herein to hold for the following persons, the number of shares of the common stock of the Richardson Dry Goods Company, set opposite their names below; all of this stock is to be held and controlled by the trustees with powers to vote it at any meeting of shareholders of said company, with the power to sell or to exchange, as they may deem best; when a dividend is made on this stock or in case of sale or liquidation, the money derived from this stock by dividend or otherwise, is to be paid to the beneficiaries as mentioned below, except such amounts as may be required to pay any of the bequests payable in cash or any debts of the estate:

"To John D. Roberts, St. Joseph, Missouri, one hundred fifty shares.

"To John D. Roberts for the use of Jess Richardson Roberts, his son, one hundred shares.

"To Evalina Roberts, wife of Jesse I. Roberts, two hundred shares.

"To Jessie Roberts, daughter of above, two hundred shares.

"To Edward D. Plummer, two hundred shares.

"To Matt T. Plummer, one hundred fifty shares.

"To Mamie Plummer, sister of above, one hundred shares.

"6.   To perpetuate the succession of this trust, I direct that each trustee who may accept this trust, shall appoint his own successor, by will or otherwise.

"7.   The remainder of my estate after these specific bequests mentioned herein are paid, there shall be paid at such time and in such manner as the conditions of my estate will in the judgment of the trustees permit to the following persons, in the proportions mentioned below, after their names, exclusive of monthly allowances mentioned herein:

"To the following persons if living at the time payments are made by the trustees:

"Evalina M. Roberts, Easton, Maryland, one-twentieth.

"James A. Donovan, St. Joseph, Missouri, one-twentieth.

"Onie Donovan, St. Joseph, Missouri, one-twentieth.

"Martina Martin, St. Joseph, Missouri, one-twentieth.

"Dora Martin, St. Joseph, Missouri, one-twentieth.

"And the following persons if living when this distribution is to be made, if deceased at that time, then the surviving wife or husband and their living children; in this case the portions of minor children are to be held by their living parents for the use and care of said minor children:

"To the following persons or their heirs as mentioned above in the proportions as stated after their names the following below:

"Estelle Brown, Taylors Island, Maryland, one-twentieth.

"Mrs. Stella Osing, Baltimore, Maryland, one-twentieth.

"John D. Roberts, St. Joseph, Missouri, two-twentieths.

"John D. Roberts, St. Joseph, Missouri, as trustee for the use and care of his minor son, Jesse Richardson Roberts, two-twentieths.

"Evalina Roberts, wife of Jesse I. Roberts, St. Joseph, Missouri, two-twentieths.

"Jessie Roberts, daughter of the above, two-twentieths.

"Ed. C. Roberts, of Galesburg, Illinois, one-twentieth.

"Matt Plummer of Richardson Dry Goods Co., one-twentieth.

"Mamie Plummer, Jr., St. Joseph, Missouri, one-twentieth.

"Ed. D. Plummer, St. Joseph, Missouri, two-twentieths.

"8.   The holdings of stock in the Richardson Dry Goods Company, remaining in the residue of my estate, after the specific bequests of above mentioned stock are considered, shall be held by the trustees mentioned herein, and their successors, until the expiration of the charter of the Richardson Dry Goods Company, or until such time

315 Mo.—41.

as the whole or any part of same is disposed of by the trustees, under the powers given them herein, it is directed that the trustees, may in their judgment sell or dispose of any part of the above-mentioned stock and hold the remainder under the powers given them herein; and while said stock or any portion of same is held by the trustees, any dividends or returns from same by sale or liquidation, if not needed for other purposes of this trust, may be distributed in partial payments, in the proportions above stated.

"9.   It is intended by the devisor, and hereby ordered that all allotments of stock in the Richardson Dry Goods Company as mentioned herein, are in the absolute control of the trustees and their successors and that the beneficiaries are to receive only the returns on their bequests when paid out by the trustees and the trustees are hereby empowered in case of a reorganization, or a continuance of the charter of the Richardson Dry Goods Company, to continue the stock holdings of the beneficiaries mentioned herein, or their legal heirs, if in the judgment of the trustees this seems for the best interest to do so.

"10.   I desire that there be no administration on my estate but should administration thereon become necessary for any reason, I nominate E. D. Plummer and H. L. Stevenson, the trustees, named herein as executors of my estate, and I direct that no bond or security be required of them as trustees or executors.

"11.   I direct the trustees to distribute and dispose of the contents of my city and country residence to such persons and in such manner as I have instructed my trustees.

"In witness whereof I have hereunto set my hand at St. Joseph, Missouri, this 14th day of September, 1923.

"JOHN D. RICHARDSON.

"We attest will by signing our names hereto as witnesses at the request of John D. Richardson, the testator, and in his presence and in the presence of each other, the said will having been signed by the said John D. Richardson in our presence.

"In witness whereof we have hereunto set our hands at St. Joseph, Missouri, this 14th day of September, 1923.

"E. N. ALLEN, Witness.
"C. B. GREGORY, Witness."

Defendants Estelle Brown, Willie Travers and Lee Travers filed separate answer and cross-petition stating lack of knowledge or information concerning the execution of the purported will, and requiring strict proof thereof; admitting that they are the sole heirs at law and next of kin of said John D. Richardson, deceased; that at the time of his death said deceased owned the real estate described in plaintiffs' petition, and other property; and further stating that

if said instrument is the last will and testament of said deceased, a construction of the trust declared in said will is necessary for a proper determination of their rights. Said cross-petition further alleged that the deceased left no wife surviving him; that paragraph 11 of the purported will is void for uncertainty, and the property therein described descends to said next of kin; that paragraphs 4, 5, 6, 7, 8 and 9 of said purported will are void under the rule against perpetuities, and the property therein described descends to said next of kin; that said paragraph 4 is also void for uncertainty, and is so intermingled with and dependent upon the validity of the bequests concerning the proceeds and dividends of stock in the Richardson Dry Goods Company as to render the same void; that defendant Mamie Plummer, who is named as a beneficiary in paragraphs 5 and 7 of said purported will, died on the —— day of June, 1924, after the death of testator and before any distribution was made by the trustees of the property described in said paragraphs 5 and 7, and that none of said property vested in the said Mamie Plummer, and the same descends to the next of kin; and that the provisions of said paragraphs 4, 5 and 7 directing that certain payments be made to John D. Roberts in trust for his minor son, Jesse Richardson Roberts, and to Ed. C. Roberts in trust for his minor son, Ed. C. Roberts, Jr., are void as attempting to create a trust upon a trust. Said cross-petitioners prayed that said paragraphs 4, 5, 7, 8, 9 and 11 of said will and trust be declared void, and that the title to all property therein described or of which testator died seized, except the bequests set forth in paragraph 2 and 3, be decreed vested in said cross-petitioners as of the date of said testator's death, and that the executor and trustees be required to render an accounting, and for general relief.

The other defendants filed separate answers setting up their respective interests as alleged in plaintiffs' petition, and asking that the will be construed. E. D. Plummer and Matt T. Plummer, executors of the will of Mamie Plummer, deceased, and Mary A. Plummer, E. D. Plummer and Matt T. Plummer, beneficiaries thereunder, filed answers requesting the court to construe the will of John D. Richardson, deceased, and advise and instruct the trustees named therein as to their powers and duties thereunder.

Plaintiffs filed a reply and answer in the nature of a general denial to the cross-petition filed by defendants Estelle Brown, Willie Travers and Lee Travers.

Upon the issues submitted the circuit court found and adjudged said paper writing "to be the last will and testament of said deceased and to have been made, executed and probated in conformity to law and that it does not violate the rule against perpetuities, and is in all of its provisions valid and binding, save only as to the clause at-

tempting to dispose of the contents contained in the city and country residence of said testator as hereinafter set out; and that it was the intention of the testator by said will to dispose of the whole of his estate." After adjudging plaintiffs to be the duly appointed, qualified and acting trustees of the trust created by said will, the court in order that the executor and the trustees under said will "may be properly advised and instructed as to their respective powers and duties, and the rights of the defendants under said will fixed and determined and the validity of the provisions of said will also determined," ordered, adjudged and decreed as follows:

"1. That under the provisions of what is designated as clause 1 of the last will and testament of John D. Richardson, deceased, as herein set out, he gave, devised and bequeathed all of his property of every kind, real, personal and mixed, to E. D. Plummer and H. L. Stevenson and their successors, in trust, with the power to hold, manage, conserve, control, sell, convey or otherwise dispose of any or all of said property, in such manner and on such terms as to them might seem proper, for the purpose of said trust so created, and with the power in said trustees and their successors to invest and reinvest all moneys coming into their hands as such trustees as they might deem best, and said trustees are directed and it is their duty to distribute said property to the person entitled thereto under the terms of said will and as hereinafter specifically set out, at any time said trustees find it to be for the best interest of all concerned to make distribution in whole or any part, and it is the duty of the trustees, and they are directed to make such distribution as speedily as it can be done without injury to or sacrifice of said property or any portion thereof and without detriment to the interest of the beneficiaries or any of them.

"2. That under the provisions of clause 2 of said will the trustees are empowered and it is their duty and they are hereby instructed, out of any assets coming into their hands and available for that purpose, to first pay all of the debts owing by deceased at the time of his death, including funeral expenses, save only such of said indebtedness as may have been paid by the executor of the estate of said deceased at the time of the final settlement thereof in the Probate Court of Buchanan County, Missouri.

"3. . That under the provisions of clause 3 of the will, the trustees are authorized and empowered and they are hereby instructed to pay monthly during their respective lives, beginning with the 5th day of February, 1924, to Evalina M. Roberts of Easton, Maryland, the sum of one hundred dollars; to James A. Donovan. of St. Joseph, Missouri, the sum of one hundred fifty dollars; and to Onie Donovan of St. Joseph, Missouri, the sum of. one hundred dollars, less such payments as may have been made to said parties or any of them by

the executor of said estate, who the court finds and declares is also authorized to pay said monthly annuities until the final settlement of his accounts as such executor. And it appearing that said estate is sufficient to pay all indebtedness and also said annuities, the executor and the trustees are authorized to make such payments without regard to the time when the indebtedness hereinbefore mentioned has been satisfied.

"4. That under the terms of clause 4 of the will the trustees are empowered and directed and they are hereby instructed, after the indebtedness owing by deceased at the time of his death has been paid or satisfied and after reserving a sufficient amount with which to pay the annuities hereinbefore mentioned, when it can be done without detriment to the estate or the interests of the beneficiaries, to pay, without interest thereon, the following amounts to the following named parties, or in case of the death of any of said parties prior to the payment of the amount due him or her, then to the representatives, heirs or assigns of such deceased, to-wit:

"To Evaline M. Roberts of Easton, Maryland, twenty-five hundred dollars.

"To Estelle Brown, Taylors Island, Maryland, ten thousand dollars.

"To Willie Travers, Taylors Island, Maryland, five hundred dollars.

"To Lee Travers, Taylors Island, Maryland, five hundred dollars.

"To Mrs. Estella G. Osing, No. 523 East Twenty-second Street, Baltimore, Maryland, ten thousand dollars.

"To John D. Roberts, No. 623 North Twenty-fifth Street, St. Joseph, Missouri, five thousand dollars.

"To John D. Roberts, to use as he may deem best for his minor son Jess Richardson Roberts, five thousand dollars.

"To Evaline Roberts, wife of Jesse I. Roberts, five thousand dollars.

"To Jessie Roberts, daughter of Evalina Roberts and Jesse I. Roberts, five thousand dollars.

"To Ed. C. Roberts, of Galesburg, Illinois, five thousand dollars.

"To Ed. C. Roberts, to use as he may see fit for his son Ed. C. Roberts, Jr., a minor, twenty-five hundred dollars.

"To Matt Plummer of the Richardson Dry Goods Company of St. Joseph, Missouri, twenty-five hundred dollars.

"To the heirs or legatees of Mamie Plummer, twenty-five hundred dollars.

"To James A. Donovan of St. Joseph, Missouri, five thousand dollars.

"To Onie Donovan, widow of Charles T. Donovan, of St. Joseph, Missouri, two thousand dollars.

"To Fred Donovan and Charles Donovan, sons of above named Onie Donovan, two thousand dollars each.

"To George R. Daniels of St. Joseph, Missouri, four thousand dollars.

"To Nora Riordan of St. Joseph, Missouri, four thousand dollars.

"To Mrs. Hal Morehead of Kansas City, Missouri, for such use as she may see fit for her daughter, Sarah Morehead, one thousand dollars.

"To Martina Martin and Dora Martin of St. Joseph, Missouri, two thousand dollars each.

"To John W. Plummer of Talbot County, Maryland, two thousand dollars.

"To Rev. Charles Molony of Christ Episcopal Church, St. Joseph, Missouri, three thousand dollars.

"And to convey to John D. Roberts of St. Joseph, Missouri, by good and sufficient deed in ordinary form, lots seven and eight in block sixteen, Eastern Extension Addition of the City of St. Joseph, Missouri, mentioned in said clause 4 of the will.

"And the court finds and decrees that the equitable title to the property bequeathed and devised to each of the beneficiaries named in said clause 4 of the will, on the death of the testator, vested in such beneficiary, and on his death or her death, in his or her representatives, heirs or assigns.

"5.    That under the terms and provisions of clause 5 of the will the trustees are authorized, empowered and directed and they are hereby instructed, after the indebtedness of said estate is fully paid and after a sufficient sum has been reserved to pay the annuities as directed in clause 3 of the will and after the payment of the foregoing bequests and devises as directed in clause 4 of the will, to set apart eleven hundred shares of the common stock of the Richardson Dry Goods Company and to hold said stock with the power to vote it at any meeting of the stockholders of said dry goods company, which said shares of stock the trustees may sell when and as soon as it can be done to advantage and without injury or detriment to the estate or the interests of the beneficiaries under said will, or any of them, and distribute the proceeds derived from the sale of said shares of stock if not needed for the payment of debts, annuities or bequests hereinbefore mentioned, and all dividends and earnings received thereon, or the amount received thereon in case of the liquidation of said company, or if not sold then they shall distribute said shares of stock to the following parties in the following proportions, to-wit:

"To John D. Roberts of St. Joseph, Missouri, fifteen one-hundred-tenths.

"To John D. Roberts of St. Joseph, Missouri, for the use of his minor son, Jess Richardson Roberts, ten one-hundred-tenths.

"To Evalina Roberts, of St. Joseph, Missouri, wife of Jesse I. Roberts, twenty one-hundred-tenths.

"To Jessie Roberts, daughter of said Evalina Roberts, twenty one-hundred-tenths.

"To Edward D. Plummer of St. Joseph, Missouri, twenty one-hundred-tenths.

"To Matt T. Plummer of St. Joseph, Missouri, fifteen one-hundred-tenths.

"To the heirs or legatees of Mamie Plummer, deceased, ten one-hundred-tenths.

"The court finds and declares that it was the intention of the testator by this clause of his will that the trustees should and they are hereby directed to make partial distribution, *pro rata*, among the beneficiaries named, whenever sufficient funds have been received from the sale or liquidation of said shares of stock or as dividends therein, and are available for that purpose.

"The court further finds, declares and decrees that the equitable title of each of the beneficiaries named in said clause 5 of the will to the property willed and bequeathed him or her therein on the death of the testator vested in such beneficiary, or in case of the beneficiary's death, in his or her representatives, heirs and assigns.

"6. That under the provisions of clause 7 of the will the trustees are directed and they are hereby instructed, after complying with the directions contained in the foregoing paragraphs of this decree, to divide the residuary portion of said estate into parts of one-twentieth each and to pay one-twentieth each to the following named parties, if living, at the time of such payment, to-wit:

"Evalina M. Roberts, Easton, Maryland, one-twentieth.

"James Donovan, St. Joseph, Missouri, one-twentieth.

"Onie Donovan, St. Joseph, Missouri, one-twentieth.

"Martina Martin, St. Joseph, Missouri, one-twentieth.

"Dora Martin, St. Joseph, Missouri, one-twentieth.

"And if any of said beneficiaries are dead when such payment or distribution is to be made, then the share of such deceased beneficiary or so much thereof as may not have been actually paid, shall return to and become a part of said estate, undisposed of by will and the trustee shall pay the same to the heirs at law of the testator as herein determined.

"At the same time said trustees shall pay the following portions of said residuary estate to the following named persons, if living at the time of such payment and distribution, and if dead, then in equal parts to the husband or wife and child or children surviving such beneficiary at the time of his or her death, or if any such surviving husband or wife or child shall have died in the meantime, then to the representatives, heirs and assigns of such person so dying:

"Estelle Brown, Taylors Island, Maryland, one-twentieth.

"Mrs. Stella Osing, Baltimore, Maryland, one-twentieth.

"John D. Roberts, St. Joseph, Missouri, two-twentieths.

"John D. Roberts, St. Joseph, Missouri, as trustee for the use and care of his minor son, Jess Richardson Roberts, two-twentieths.

"Evalina Roberts, wife of Jesse I. Roberts, St. Joseph, Missouri, two-twentieths.

"Jessie Roberts, daughter of said Evalina Roberts, two-twentieths.

"Ed. C. Roberts of Galesburg, Illinois, one-twentieth.

"Matt Plummer of the Richardson Dry Goods Co., one-twentieth.

"Ed. D. Plummer of St. Joseph, Missouri, two-twentieths.

"The court finds, declares and decrees that under the provisions of said clause 7 of the will the equitable title of each of the five beneficiaries first named therein, to-wit, Evalina M. Roberts, James A. Donovan, Onie Donovan, Martina Martin and Dora Martin, on the death of the testator, vested in such beneficiary, the legal title to such interest being in the trustees, but that such interest or estate of the beneficiary is subject to the contingency of being defeated by the death of such beneficiary before distribution, in which case the interest of such beneficiary would return to and become a part of said estate undisposed of by will and the trustees in that event are directed to pay the same to the heirs at law of testator as herein determined; and that the remaining beneficiaries named in said clause 7 each took the equitable title to the interest or estate bequeathed him or her which vested on the death of the testator, subject to the contingency of being defeated in case of the death of such beneficiary before distribution, in which event the indefeasible title to such beneficiary's interest or estate vested in equal parts in the husband or wife and child or children surviving such beneficiary at the time of his or her death and in the event of such beneficiaries leaving no husband or wife, child or children surviving him or her, then said interest of such beneficiary shall be distributed to the heirs at law of said testator as herein determined, said last-named beneficiaries in clause 7 being as follows, to-wit: Estelle Brown, Mrs. Stella Osing, John D. Roberts, John D. Roberts as trustee for the use and care of his minor son, Jess Richardson Roberts, Evalina Roberts, Jessie Roberts, Ed. C. Roberts, Matt Plummer, Mamie Plummer, Ed. D. Plummer.

"Mamie Plummer, named as one of the beneficiaries in clause 7, to whom was bequeathed one-twentieth of the residuary estate, having died since the death of the testator, and said Mamie Plummer having left surviving her no husband or child or children or descendants, it is found and decreed by the court that said legacy has lapsed and that said one-twentieth of the residue of said estate willed to said Mamie Plummer, deceased, returns to and becomes a part of said

estate undisposed of by will, and is to be distributed to the heirs at law of the testator as herein determined.

"7.   That under the provisions of clause 8, all shares of stock of the Richardson Dry Goods Company which may be a part of the residuary portion of the estate may be held by the trustees until the expiration of the present articles of incorporation or existing charter of said company, should [it] be found to the best interest of all concerned so to do, or all or any part of said stock may be disposed of at any time it can be done to advantage, and that until said stock is sold by the trustees, all dividends or returns received therefrom. if not needed in satisfying the debts, legacies and expenses herein provided for, shall be distributed, *pro rata*, as received, to the beneficiaries mentioned in this clause, or if dead, then to the other persons entitled thereto as herein decreed.

"8.   That under the provisions of clause 9 of the will, the trustees may, upon a reorganization of the Richardson Dry Goods Company or a continuance of its articles of incorporation, retain the control of the eleven hundred shares of common stock of the Richardson Dry Goods Company bequeathed in clause 5 of the will, provided the best interests of the estate and the beneficiaries make it advisable so to do, but that it is the duty of the trustees as soon as it can be done to advantage and without detriment to said interests, to sell and dispose of said shares of stock and distribute the proceeds to the beneficiaries named in said clause 5 as hereinafter directed, and all dividends or returns received from said shares of stock prior to distribution, if not needed to satisfy the debts or the expenses incurred, or the annuities or the legacies provided for in clause 2 and clause 4 of the will as herein set out, shall be distributed, as received, to the beneficiaries named in said clause 5 in the proportions hereinbefore set out.

"9.   That clause 10 of the will, in which the deceased expressed a desire that there be no administration of his estate, was ineffective in law to accomplish said purpose, and said estate is being properly administered in the Probate Court of Buchanan County, Missouri, and plaintiff, E. D. Plummer is properly acting as the executor thereof under the will.

"10.   That clause 11 of the will is insufficient in law to constitute a testamentary disposition of the contents of the city and country residences of the deceased and said personal property referred to in said clause becomes a part of the residuary portion of the estate undisposed of by will and is to be distributed to the heirs at law of said testator as herein determined.

"11.   It is further ordered, adjudged and decreed that the plaintiffs as trustees now have and hold the legal title to the real estate owned by deceased at the time of his death and are entitled to the

possession, control and the management thereof, and may sell, dispose of and convey the same at such times and in such manner as it can be done to advantage, without prejudice to the interests of the estate or the beneficiaries; that upon the final settlement of the estate of said deceased in the Probate Court of Buchanan County, Missouri, the trustees or their successors shall receive from the executor of said estate or his successor all of the personal property or the proceeds thereof, remaining in the hands of such executor, and shall hold, manage, sell, convey and dispose of said property or the proceeds thereof as herein ordered and directed, such distribution to be made as expeditiously as it can be done with due regard to a prudent and careful management of said estate as a whole and without injury to the interest of the beneficiaries or any of them.

"12.   That under the terms and provisions of said will the trustees under said will, and their successors, each, may in writing or by his last will and testament appoint his successor.

"13.   That it is the duty of the trustees and they are hereby instructed to take, hold, manage, sell, convey and distribute all of the property of the estate coming into their hands as trustees; and that in carrying out the duties imposed on them, in addition to the payment of taxes of every kind, insurance and other carrying charges of every nature, they may incur such expenses as may be reasonably necessary in the way of employing counsel, agents, clerical and other assistance.

"14.   That for the purpose of giving the trustees such further instructions as may be necessary from time to time, and in order that the compensation of the trustees may be fixed by the court, and in order that the acts of the trustees may be subject to review by the court at the instance of any party to this suit, and for the purpose of making such further orders, judgment and decrees herein as may be necessary from time to time, the court retains jurisdiction of the trustees and of this cause and the parties thereto, and the trustees are directed to make written report to this court at the January term in each year, duly verified by their affidavits, showing, in detail, all property received by the trustees, how disposed of and the expenses incurred.

"It is further ordered that the costs of this proceeding be paid by the executor of the estate or by the trustees out of any money or property in their hands as trustees, except such costs as have been or may be made by the defendants Estelle Brown, Willie Travers and Lee Travers, which said costs are taxed against said last named parties, and that execution issue accordingly."

From the above judgment all parties appealed except defendants James A. Donovan, Onie Donovan, Fred Donovan and Charles Donovan.

I. The appeal of Estelle Brown, Willie Travers and Lee Travers will be considered first because it challenges the validity of the will as a whole, and if their principal contention, that the will is void

under the rule against perpetuities, is upheld, a con-

**Perpetuity: Rules for Guidance.**

sideration of the other cross-appeal will be unnecessary. In their brief respondents E. D. Plummer et al. concede appellant's first point that the rule against

perpetuities is not a rule of construction, but a peremptory command of the law, and in determining whether or not the provisions of a will violate the law as to perpetuities, the court does not consider whether the estate or interest may vest, but whether it must vest within the limit of the rule. [2 Alexander on Wills, pp. 1677-8.] At the same time, respondents insist that an additional rule must be regarded, which is that "While there is no dissent from the correctness of the view that the rule against perpetuities disregards intention, yet in practice it is customary for the courts to bear in mind the principle that no man desires to die intestate, and if there are two possible constructions of a testament, one of which would permit effect being given to the whole will and the other which would result in part of the will being rendered void and a partial intestacy occurring, preference will be accorded to the construction which will uphold the will, and this applies to a part of the will as well as the whole." [21 R. C. L. p. 295.] Respondents also distinguish between the vesting of an interest and the postponement of its enjoyment, thus: (a) "The rule against perpetuities has reference to the time within which the title vests, and has nothing to do with the postponement of the enjoyment. A vested interest does not necessarily include a right to the possession, and if an interest is vested it is not subject to the rule, however remote may be the time when it may come into possession." [21 R. C. L. p. 290, sec. 12; Gates v. Seibert, 157 Mo. 254; Gray v. Whittemore, 192 Mass. 367, 78 N. E. 422; Landers Inv. Co. v. Brown, 300 Mo. 348.] (b) A term for a thousand years is good, if it vests within the period. [30 Cyc. 1484.] (c) "As far as the rule is concerned the mere postponement of the time of payment of a gift is not important." [21 R. C. L. p. 290, sec. 12.] (d) "If the event upon which a contingent remainder is limited must happen, and the contingent becomes a vested remainder within the time allowed by the rule against perpetuities, the rule is not violated by the fact that the remainder so vested is not to be enjoyed until some future fixed time." [21 R. C. L. p. 290, sec. 12; 30 Cyc. 1482; 21 R. C. L. 297; Deacon v. Trust Co., 271 Mo. 669.]

Preliminary to their main argument that the testator created a perpetual trust, appellants in points 2 to 8, both inclusive, of their brief lay down the following principles or rules of law:

In the process of determining whether or not a will offends the rule against perpetuities the instrument "is to be construed from its four corners, including the provisions assailed as controverting the rule against perpetuities, 'as if the rule did not exist, and then to the provision so construed the rule is to be remorselessly applied.' " [Gray on Perpetuities (3 Ed.) sec. 629 et seq., p. 497 et seq., and cases cited; 21 R. C. L. p. 294, secs. 18, 19; Loud v. Trust Co., 298 Mo. l. c. 171; Deacon v. Trust Co., 271 Mo. l. c. 684.] They also state that in the construction of a will creating or attempting to create an interest or estate prohibited by the rule against perpetuities the real intention of the testator as shown by the entire instrument should be the guiding star (Loud v. Trust Co., 298 Mo. l. c. 171); and that in the ascertainment of this intention the following usual rules of interpretation apply: (1) The whole instrument is to be considered. [Dickerson v. Dickerson, 211 Mo. 496.] (2) The intention of the testator must govern, and when that appears all technical rules of construction must give way. [Sec. 555, R. S. 1919; Grace v. Perry, 197 Mo. l. c. 559.] (3) "Evidence of surrounding circumstances, of the subject-matter of the devise, and of the persons to be benefited thereby is receivable, in order to place the court, so far as may be, in the situation of the testator, and, looking from his standpoint, to determine both the subject and objects of his bounty." [Hall v. Stephens, 65 Mo. l. c. 677.] Appellants cite Loud v. Trust Co., 298 Mo. l. c. 170, wherein we said that a perpetuity may be substantially defined as a "future limitation, whether executory or by way of remainder, and of either real or personal property, which is not to vest until after the expiration of, or will not necessarily vest within, the period fixed and prescribed by law for the creation of future estates and interests, and which is not destructible by the persons for the time being entitled to the property subject to the future limitation, except with the concurrence of the individual interested under that limitation." They say that the rule is applicable to personal as well as real property, to equitable as well as real interests, and to interests in changeable funds; that "every interest in personal property which is provided to take effect *in futuro,* is of an indestructible nature, and, in that respect, differs from certain remainders in realty under the common law" (Schouler on Personal Property, sec. 149, pp. 217-218); that the time limit fixed by the rule for the vesting of future interests, in case there is a precedent life estate, is for a life or lives in being and twenty-one years and ten months thereafter (1 Perry on Trusts, 6 Ed., sec. 182, p. 601; Koehler v. Rowland, 205 S. W. l. c. 220); that a perpetuity will be no more tolerated in a trust than in a legal estate (1 Perry on Trusts, 6 Ed., sec. 382, pp. 620, 621), and in ascertaining the validity of a private trust inquiry must be made as to when the beneficiaries, as

well as the trustee, are to acquire their interests (Webster v. Wiggins, 28 L. R. A. 1. c. 514); that in this case the gifts are void, unless (1) the person to take is so pointed out that he must be ascertained within the prescribed time, and (2) his interest must vest within that period (Dickerson v. Dickerson, 211 Mo. 1. c. 488); and that an estate or interest is contingent when it is limited to take effect "either to a dubious or uncertain person or upon a dubious or uncertain event" (DeLassus v. Gatewood, 71 Mo. 1. c. 376-7).

None of the parties complain that the above principles and rules are not correctly stated and they appear to be good text-book law, though presented somewhat generally in the briefs. We have restated them here in order that they may be kept fresh in mind and given proper weight and consideration when found applicable.

II. Appellants' main contention is that the testator created a perpetual trust. As we read their brief this argument is advanced upon the following grounds:

1. That (quoting from the printed argument): "The general plan, scope and design of the will in question, as shown by the plain language used by the testator therein and by the facts and circumstances in connection therewith, evidence an unmistakable intention to vest the title to the great bulk of the estate, consisting of stock and other interests in the Richardson Dry Goods Company, unhampered by legal or equitable claims of any person (except, perhaps, the payment of the monthly sums first mentioned in the will), in the hands of employees, as trustees, and their successors in trust, to be named by them, to hold, manage and absolutely control, during the life of the present charter of that company and a renewal thereof or a reorganization of the company, which would constitute a period far beyond the time permitted under the rule against perpetuities."

(a) Citing general powers given trustees under the first provision of the will.

(b) Citing power given trustees in the body of the will to appoint their successors.

(c) Citing discretion allowed trustees as to payments in paragraph 4 of the will.

(d) Citing powers of trustees in paragraph 5 of the will as to stock of the Richardson Dry Goods Company.

(e) Citing concluding paragraphs of the will as to discretion of the trustees in disposition of stock of the Richardson Dry Goods Company remaining in the residue of the estate.

(f) Citing surrounding facts and circumstances admitted in evidence as pertinent in construing the will.

Proceeding under the rule above stated in Hall v. Stephens, 65 Mo. l. c.. 677, and reading the will in the light of surrounding circumstances disclosed by the record, we find that testator was disposing of a large estate, more than two-thirds of which consisted of stocks, deposits and undeclared dividends in the Richardson Dry Goods Company. He was the principal owner, managing head and financial support of this company and had indorsed its notes in excess of $900,-000. At the time of his death he had less than $50,000 in cash, all of which was on deposit with this company. He had no wife or descendant, but desired to extend his bounty to a number of more or less distant relatives, and friends not of his own kin, many of whom resided in distant states, and were wholly unacquainted with the business which would necessarily constitute the bulk of his estate. The testator naturally foresaw that his entire estate would be endangered by scattering the stock, deposits and accumulated profits in the dry goods business among these numerous beneficiaries immediately upon his death. Not only was it necessary to place his estate for the most part beyond the immediate enjoyment of the beneficiaries and in the hands of trustees peculiarly fitted to manage and direct the dry goods business, but the very exigencies of the business were such that these trustees must have full powers to manage, reinvest, convert into cash, determine their successors in trust, and permit the beneficiaries to enter upon the partial or full enjoyment of their bequests as and when their sound business discretion should direct, consistent with the testator's true purpose and intent as gathered from the four corners of the will. The very nature and condition of testator's property required that the subject of his benefactions be handled in this way. The testator did not know just when, without undue impairment or sacrifice of his estate which chiefly consisted of stock in a large going business concern, it would be possible to permit the beneficiaries of the bulk of the estate to enter upon the enjoyment of their bequests. Consequently, except as to the three bequests directed to be paid monthly in paragraph 3, he left this to the sound business discretion of his trustees, providing only that the sums required to be paid by paragraph 4, and elsewhere in the will referred to as bequests, be paid to the persons therein named; that the stock and dividends mentioned in paragraph 5, and elsewhere in the will referred to as bequests, be held for and paid to the persons therein named; and that the residue of the estate be paid to certain persons named in paragraph 7 "if living at the time payments are made by the trustees," and to certain other persons therein named "if living when this distribution is to be made, if deceased at that time, then the surviving wife or husband and their living children." We find nothing in the entire will or in any of the facts and circumstances in evidence which indicates an

intention to postpone the full enjoyment of the bequests for any reason personal to the beneficiaries. The indications are that every postponement was for the benefit of the estate. The fundamental function of a will is the disposition of property. The chief intent in this case was to benefit certain persons. Had the testator's general purpose and aim been to continue the business of the Richardson Dry Goods Company in perpetuity he would doubtless have so provided in plain terms. His manifest desire to safeguard the estate against unreasonable depreciation evidences a purpose that his beneficiaries should enjoy the full fair value of his property, and expression of that desire should be construed in aid of and not to destroy his clear controlling purpose that his property go to the beneficiaries named and as stated in the will. The provisions complained of are only such as were appropriate and reasonably necessary to assure an intelligent experienced management of his estate, and guard against an improvident and ill-timed distribution that might so diminish its value as to deny substantial benefits to the objects of his bounty. We have repeatedly read the will in the light of surrounding facts disclosed by the record and have examined the portions above cited with great care. The testator knew the circumstances and was not insensible to the immediate needs of his relatives and friends thus remembered. Nowhere does it appear that he intended to postpone the full enjoyment of his benefactions a day beyond the time when distribution could be had without seriously impairing the value of the property to be distributed, and in ascertaining the testator's intent it is presumed that he intended to dispose of his entire estate (40 Cyc. 1409), and the law favors the vesting of estates. [40 Cyc. 1650; Tindall v. Tindall, 167 Mo. 1. c. 225.] We are of the opinion that under our well-established rules of construction the general plan, scope and design of the will is that the beneficiaries shall enter upon the full enjoyment of their respective bequests at the earliest possible moment the condition of his estate will permit, and not that the trust shall extend for ''a period far beyond the time permitted under the rule against perpetuities,'' as urged above and in appellants' subsequent points. So much as to the general purpose and intent of the testator, and we agree with appellants' ninth point that mere technical rules must yield to the testator's intent. Appellants, however, earnestly urge that the will in terms violates the positive rule against perpetuities.

2.   Under points 11, 12, and 13 they argue that the bequests under paragraph 7 of the will are contingent and not vested.

The intention of the testator again controls. It is said in 40 Cyc. 1650: ''The intention of testator as gathered from the will must prevail as to whether an estate is vested or contingent.''

In their tenth point appellants say that the will shows an intent to keep the whole property intact as long as the trustees thought best and that the trustees are vested with full discretion. We take it that this discretion must be reasonably exercised in good faith and in furtherance of the testator's dominant purpose above ascertained, which purpose is inconsistent with an intention to create a perpetual trust. Now, did any interest in the bequests provided in paragraph 7 of the will vest in the beneficiaries on the testator's death, or will no interest vest in them unless and until the trustees make distribution? Does the will postpone the vesting of every interest until the time of such distribution, or is it the enjoyment only of these bequests that is postponed? Appellants say that no interest vests until such distribution, and as the will does not provide that distribution must be made within the time allowed under the rule against perpetuities, the will violates the rule, citing Kelley's Est., 253 Pa. St. l. c. 472; Hill on Trustees (star page) 495; Ballantine v. Ballantine, 152 Fed. l. c. 781; Siedler v. Syms, 56 N. J. Eq. 275 et seq. Assuming that there are no limitations upon the trustees' discretion, appellants derive from these authorities the doctrine that "a chancellor will not interfere to control the trustee's discretion." We do not grant the correctness of this assumption, and we find no fault with the doctrine, but these authorities aid respondents rather than appellants.

In Kelley's Est., 253 Pa. St. 466, the original will contained this provision: "I give and bequeath to my nephew, E. W. Kelley, the sum of ten thousand dollars absolutely." The first codicil revoked this provision and left the same amount to testator's wife "in trust for E. W. Kelley to be disposed of as she may think best, either in buying a small farm or whatever in her judgment is for his best interest." A later codicil read: "The legacy to E. W. Kelley I leave in trust to Edith S. Kelley to dispose [of] as she thinks best." In holding that the legal representative of E. W. Kelley was not entitled to either *corpus* or interest of this legacy, but that it fell into the undistributed remainder of the estate of John G. Kelley, deceased, the court said (l. c. 470-1): "The fact that the bequest is to a trustee, while inconsistent with the idea of an absolute gift to the beneficiary named, may or may not be conclusive of the question, depending on what may be derived as to it from the whole spirit and intention of the will. In Van Rensselaer v. Dunkins' Exrs., 24 Pa. 252, a case much relied on by the appellee, the gift was to the executors in trust to pay the rents and profits to certain persons, and it was held a gift absolute, but, for the reason that it was the entire estate that was so given, and since the testator therefore did not die intestate with respect to any part of it, the conclusion was that the executors held it in trust for the beneficiaries who were invested with equitable title to it. In the present case there was no gift of income,

and the gift constituted a minor part of the testator's estate. The distinction marks the difference between these two cases, and like distinction is to be observed in all the other cases cited." We think the instant case clearly falls within the above distinction in that paragraphs 8 and 9 give to these beneficiaries the dividends and returns of the stock "in the proportions above stated" as long as held by the trustees. True, paragraph 8 provides that "any dividends or returns from same by sale or liquidation, if not needed for other purposes of this trust, may be distributed in partial payments," and paragraph 9 provides that "the beneficiaries are to receive only the returns on their bequests when paid out by the trustees," but a clear distinction is thus drawn between the meaning of "dividends" and "returns" as here used by the testator. "Dividends" do not come by "sale or liquidation" as "returns" are designated in paragraph 8. Money derived by dividends from stock is also distinguished from money derived from "sale or liquidation" in paragraph 5. Hence, we must attach significance to the fact that the word "dividends" is not used in paragraph 9. Testator did not refer to dividends when he said that "the beneficiaries are to receive only the returns on their bequests when paid out by the trustees," but intended that the trustees should pay the dividends as received to the beneficiaries, "if not needed for other purposes of this trust," and the reference to dividends in paragraph 8 amounts to an absolute direction to do so, although the trustees were given a discretion as to the time when payment of the returns from the stock by sale or liquidation should be made. Distribution of these dividends can be postponed or defeated only if needed for other purposes of this trust, and not by an unrestricted discretion of the trustees. "A gift of the income of a fund without limitation as to time is a gift in perpetuity and carries the fund itself." [Millard's Appeal, 87 Pa. 457; Robert's Appeal, Geiger's Est., 59 Pa. 71.] Thus, upon the reasoning of appellants' authority the entire beneficial interest of the property disposed of by paragraph 7 vested in the beneficiaries named upon the death of the testator, although the estate so vested in each beneficiary may determine on his death before distribution.

Hill on Trustees, page 495, cited by appellants, deals with trustees of executory trusts. It lays down the familiar doctrine (l. c. 498) that "the words of the will receive their full legal effect, unless it appear from the will itself, that the testator's real meaning would be frustrated by the strict execution of his directions." This is but another way of stating the rule heretofore announced that mere technical rules of law must give way to the intent of the testator.

The provisions of the will construed in Ballantine v. Ballantine, 152 Fed. 775, were quite different from the one now before us, especially in the character and extent of discretion allowed, but even in

that case the right of the testator to postpone possession or enjoyment without creating a perpetuity was thus upheld (1. c. 784):

"I think that the principle which distinguishes the case at bar from those cited by complainant's counsel lies in the fact that herein we find not only a trust, but an active trust. Not only is the principal of the fund, as already shown, measurably subservient to a life interest, but its payment to the beneficiary by the trustees is not to be made arbitrarily, and at all events, but at their discretion, a discretion which, in the absence of fraud, the court cannot control. We are not dealing with a dry trust, but an active and continuing one; and I discover nothing whatever in its terms which creates or tends to create a perpetuity, or which is otherwise opposed to public policy. The testator had the right to postpone its payment to a definite period beyond the majority of the beneficiary, and he had an equal right to have its payment further withheld at the discretion of his trustees. There is no valid reason why a testator may not confer a discretionary power upon trustees to parcel out the payment of the principal of a legacy just as he may undoubtedly parcel out the income of a fund. It would be a hard and unreasonable rule which held otherwise, since it would compel a parent who doubted the wisdom of giving the principal of his estate to a son at majority, but who would like to have portions thereof paid to him from time to time, in the discretion of trustees, to leave the principal to a remainderman while the income alone was doled out to the son."

In Siedler v. Syms, 56 N. J. Eq. 275, the testator directed his executors to transfer to the cashier of the First National Bank of Hoboken eighty shares of stock therein "to be held and used by said cashier and his successor and successors in office, in trust, for·the following uses and purposes, to-wit: To collect and receive during the corporate existence of said bank, either under its present charter or by virtue of any renewals or extensions thereof, the dividends made and declared payable from time to time thereon, and upon the first days of January in each and every year thereafter to divide and distribute such dividends equally among all the clerks and employees (including the cashier and janitor) of said bank, who shall at the time of such distribution be actually employed therein and whose employment in said bank shall have continued for a period of at least two years. . . . In case said bank shall by dissolution or otherwise cease to exist, then, and in that event, I give and bequeath the said eighty shares of stock, together with any increase of shares thereon, as aforesaid, or the money payable in lieu thereof, to the Bank Clerks' Mutual Benefit Association of the City of New York, to be held and invested by said association as a part of its permanent fund, and the income arising therefrom to be used and employed as may be directed by the·constitution and by-laws of said association."

This will is easily distinguished from the one now before us in that the former vests no discretion in the trustee, contemplates in the first instance no beneficiaries except employees of the bank, and does not look to a time when the stock or proceeds thereof shall be distributed to them. Any intent to so distribute is negatived by the express direction to collect and pay over the dividends as long as the bank should exist.

Appellants' authorities do not support the argument advanced in thirteen and other points, because the argument entirely ignores the fact that the discretion of the trustees is not without limitation. The trustees are always under compulsion to carry out the testator's main purpose as disclosed by the will, and their discretion must always be subservient thereto. They function not in the exercise of a mere power, but in the discharge of a trust. The distinction is well indicated in Hardenburgh v. Blair, 30 N. J. Eq. 645: "The distinction is between a mere power, which is left discretionary with the donee, and a trust in connection with which there is a discretion lodged with the trustee as to the manner in which it shall be performed. Simple powers, which are purely discretionary, are not imperative. Trusts are always imperative, and while a court of equity will not ordinarily interfere with the discretion of a trustee fairly exercised, yet it will not permit the discretion to be so exercised as to defeat the substantial purpose of the trust. [2 Spence's Eq. Jur. 81-88; 2 Lead. Cas. in Eq. 964, note to Hastings v. Glyn.]"

Furthermore, the grant of discretion contained in the instrument now before us is nothing like as broad as that found in many cases cited by appellants, for instance, Kelley's Est., 253 Pa. St. 466, supra. Testator Richardson provided in detail for the objects of his bounty according to their deserts as he saw them. He sought no aid from and allowed no discretion to his trustees in this respect. He asked their aid only in the business administration of his estate, which on account of the peculiar nature of the estate necessarily included a proper determination of the time when the same could be safely distributed among the beneficiaries, and in this respect he rightly gave the trustees wide discretion. In the exercise of such prudence and foresight of course the testator could not fix a definite time when his beneficiaries would enter upon the full enjoyment of his bounty, but it is quite evident that any postponement of the enjoyment was for the convenience and benefit of the estate and not for any reason personal to the beneficiaries. In such case the legacy vests upon the death of the testator and is not contingent until payment is made. This is an exception as well established as the general rule, and it is thus stated in 2 Alexander on Wills, section 996: "The general rule is that if, from the whole will, it appears that payment of any devise or legacy was merely for the convenience of the estate or the one

charged with such payment, the beneficiary takes a vested interest at the death of the testator. Nor is the vesting deferred where payment is postponed until the testator's debts are satisfied, or an outstanding security gotten in, or until certain property be sold, or until money directed by the will to be laid out in the purchase of land is so laid out. Likewise a provision directing that none of the devises or legacies shall be executed or take effect until a certain hall shall be completely finished and paid for out of the estate, was considered not to suspend the vesting, but only the payment of the legacies and devises.'' This doctrine was invoked in Collier's Will, 40 Mo. 287, l. c. 325: ''The postponement of the payment, division and partition in the case here seems to be more for the benefit and convenience of the estate than for any considerations personal to the heirs and devisees, and where such is the case it is clear that deferring the payment or partition does not prevent the devise or legacy from vesting. [Fuller v. Winthrop, 3 Allen, 51; Harris v. Fly, 7 Paige, 421; Marsh v. Wheeler, 2 Edw. Ch. 163; 1 Jarm. 756-63.]'' In Knight v. Pottgieser, 52 N. E. l. c. 935, the exception is thus stated: ''It is a general rule, in regard to vesting of personal legacies, that if there is no independent bequest, but only a direction to pay at a future time or upon the happening of a certain event, the vesting will be postponed until the event has occurred or the time arrived. But the general rule is subject to an exception so well established and universally recognized as to practically constitute another general rule, which is: Though a gift arises wholly out of directions to pay or distribute *in futuro,* yet if such payment or distribution is not deferred for reasons personal to the legatee, but merely because the testator desired to appropriate the subject-matter of the legacy to the use and benefit of another for and during the life of such other, the vesting of the gift in remainder will not be postponed, but will vest at once, the right of enjoyment only being deferred.'' In Hawkins on Wills, p. 231, the same principle is thus stated as a rule: ''A bequest in the form of a direction to pay, or to pay and divide, at a future period, vests immediately, if the payment be postponed for the convenience of the estate, or to let in some other interest.'' See also Mettler v. Warner, 243 Ill. 600; Baker v. McLeod's Estate, 48 N. W. l. c. 659; McLaughlin v. Penney, 70 Pac. l. c. 344; Scofield v. Olcott, 11 N. E. (Ill.) 351; Wedekind v. Hallenberg, 10 S. W. 368; Van Dyke's Admr. v. Vanderpool's Admr., 14 N. J. Eq. 198; Robert v. Corning, 89 N. Y. 225; and Deacon v. Trust Co., 271 Mo. 669. The foregoing authorities fully justify the conclusion that the bequests vested upon the death of the testator even if the will, as appellants argue in point 14, contained no indication of gift other than direction to pay, although a careful reading of the will discloses that even this contention is without merit.

Nor is there any substantial ground for appellants' claim that the bequests are limited to take effect "either to a dubious or uncertain person or upon a dubious or uncertain event." The bequests are to certain persons who were in being when testator died, or to their specified heirs. The bequests are to be paid at such time and in such manner as the condition of the estate will in the judgment of the trustees permit. This, as we have indicated, does not mean an unbridled discretion, nor can it be used to destroy the testator's main purpose and intent. Consequently, the time of payment is neither dubious nor uncertain, because it is bound to occur. The words denoting payment disannex the time from the gift of the legacy, so as to leave the gift immediate, in the same manner in respect of its vesting, as if the bequest stood singly, and contained no mention of time. [2 Williams on Executors, p. 1052.]

The foregoing reasons which we think fully sustain the validity of the bequests under paragraph 7 of the will apply with equal force to any suggestion that the bequests under other paragraphs are void as violative of the rule against perpetuities, and we hold that the will does not violate this rule.

III. The above conclusion renders it unnecessary for us to pass upon appellants' point 15, which is that the whole will fails when portions embracing parts of the testator's general plan are void under the general rule against perpetuities.

Appellants neither brief nor argue point 16, which is that the provisions of the will directing the trustees to pay certain bequests to John D. Roberts and Ed C. Roberts, for the use and benefit of their minor sons, are void as an attempt of the testator to create a trust upon a trust. The provisions are not open to this objection and we rule this point against appellants.

IV. We now turn to a consideration of the appeal of E. D. Plummer et al., Trustees.

All parties agree that paragraph 11 of the will constitutes no valid disposition of the property therein mentioned, said paragraph being as follows: "I direct the trustees to distribute and dispose of the contents of my city and country residence to such persons and in such manner as I have instructed my trustees." Mamie Plummer, Jr., named in the second list of beneficiaries under paragraph 7 of the will, died testate, without surviving husband or living children, some months after the decease of testator Richardson, but before the trustees made any distribution under paragraph 7 of the will. The trial court held that testator Richardson's three heirs at law took the contents of the city and country residences and the share of any residuary legatee which lapsed by death, and "this construction of

the residuary clause is the sole complaint of appellants on this appeal.''

Appellants assert that the trial court's holding is erroneous, and cite the following rule, stated in 40 Cyc. 1564, as controlling: ''It is a general rule always to construe a residuary clause so as to prevent an intestacy as regards any part of the testator's estate, unless there is an apparent intention to the contrary.'' They further contend that the will taken as a whole discloses the testator's intention to devolve his entire residuary estate upon the residuary legatees therein named, irrespective of the sum each should receive, and that no part of the residuum should go to his next of kin, except to Estelle Brown, who is named as a residuary legatee and who under the will takes as such. Appellants, however, make no contention that these residuary legatees constitute a class or that the will in terms creates a joint tenancy.

Respondents justify the circuit court's ruling by a principle relative to residuary clauses thus stated in 40 Cyc. 1570: ''The most important exception to the comprehensiveness of a general residuary ·clause is that it does not include any part of the residue itself which fails.''

Appellants' above quotation from 40 Cyc. 1564, relates to the subject of ''general or particular residue.'' The next succeeding sentence reads: ''Consequently, where the will contains a general residuary clause, in order to exclude a particular property belonging to the testator, and not otherwise disposed of, a plain and unequivocal intention on the part of the testator to exclude that property from the operation of the clause must be manifested; an ambiguous residuary clause being construed broadly rather than narrowly.'' The residuary clause now before us is general and unambiguous. It should be construed neither broadly nor narrowly, but according to the testator's intention as ascertained from the four corners of the will.

The first question we must determine is whether, paragraph 11 being an ineffecutal attempt to dispose of the property therein described, the contents of the city and country residences go as intestate property direct to testator's next of kin, as held by the trial court, or whether such property is a part of the residuum created by paragraph 7 of the will. The first clause of paragraph 7 reads: ''The remainder of my estate after these specific bequests mentioned herein are paid,'' etc. The contents of the city and country residences are not mentioned or referred to in any preceding part of the will. Had the will closed with paragraph 7 no one would contend that this property was not a part of the residuary estate. The general language of the clause clearly includes it. In a subsequent part of the will, paragraph 11, testator attempts to withdraw this property

from the residuum. From this attempt two negative inferences must be drawn as to testator's intention with regard to this particular property. First, he did not intend that it be distributed as a part of the residuum; and, second, he did not intend that it be treated as intestate property. Any attempt to say how testator actually intended to dispose of this property would be sheer speculation, because his instructions to his trustees, referred to in paragraph 11, are not a matter of record. Any determination of the question first above stated will defeat one or the other of these particular intentions. In such case the particular intention must give way to the general intention of the testator. Having made a will and in its very beginning having given all of his property to trustees, it was clearly his general intention to die testate as to all of his property, and the only way that this general intention can be respected and carried out is to treat the contents of the city and country residences, notwithstanding testator's ineffectual attempt to separately dispose of them, as a part of the residuary estate, and the trial court should have so ruled. [Sandusky v. Sandusky, 261 Mo. 1. c. 358.]

Respondents have cited many authorities, too many to be separately discussed in this opinion, but we have read them all, as well as those cited by appellants, and find that the great weight of authority supports our conclusion above stated. The rule here in point is that "in construing wills with regard to the question as to whether lapsed legacies or devises will fall within the residuary clause, preference will be given to that construction which will prevent a partial intestacy, rather than to one that will permit it, provided such construction may reasonably be given. Hence, where the intent of the testator to make a complete disposition of all of his property is manifest throughout his will, its provisions will be so construed, if they reasonably may be, as to carry out his intention in this regard." [10 A. L. R. p. 1526.] From the multitude of supporting cases we cite two clearly in point  In re Pringle (1881), L. R. 17 Ch. Div. 819, 50 L. J. Ch. (N. S.) 689, 45 L. T. (N. S.) 11, 30 Week Rep. 44, the will contained several specific bequests of property. Following these bequests there was a provision disposing of all of the rest of the testatrix's money, however invested. This clause was followed by other paragraphs bequeathing small articles to different persons. This residuary legacy was held to be general, and to carry a lapsed bequest of cash in the bank, furniture and effects, freehold interests, and stock. Also, in Reeves v. Reeves (1880), 5 Lea (Tenn.) 653, the court said that a special exception from a residuary bequest of certain property, and giving it to another legatee, will not prevent the excepted portion from going to residuary legatees, if the excepting legacies fail by an event analogous to lapse, or in consequence of the

indefinite manner in which the trust in favor of the other party was expressed.

The next question is, must the part or portion in the residuum given to Mamie Plummer, Jr., and defeated by her death, be distributed among the residuary legatees or among the testator's next of kin?

It is conceded that the residuary legatees do not constitute a class and that the will does not create a joint tenancy, but appellants insist that the will taken as a whole and read in the light of surrounding circumstances in evidence discloses an intention on the part of testator to give the entire residuum to his residuary legatees, in the proportions indicated, their respective shares in the entire residuum, however, being subject to augmentation by the defeat of the shares of other residuary legatees. Respondents say that the residuary legatees having been given an aliquot part of the residuum without the creation of a class or joint tenancy, it was the intention of the testator that the shares of these residuary legatees should not be augmented, and that any defeated share should go to the testator's next of kin.

We have carefully reviewed all the facts and circumstances in evidence and calculated to aid in the interpretation of the will, but to our mind they throw no light on this question. The effort to show testator's lack of affection and confidence in two of his next of kin tells us nothing. He was under no legal obligation to remember them at all, but he did with substantial bequests. Appellants suggest that in so doing he fixed his estimate of their just deserts and did not intend that they should receive more. Respondents aptly reply that testator did the same thing when he gave his residuary legatees aliquot parts in the residuum, and thereby evidenced his intention that they should receive no more. Appellants also reply on the rule stated in 40 Cyc. 1564, supra, but as we have heretofore indicated, this rule is for the determination of what property shall go into the residuum and not who shall be the distributees.

Respondents seek to bring this case within the exception in 40 Cyc. 1570, cited and set out above, which is well-settled law in England and sometimes followed in the United States. It was thus expressed by Sir William GRANT in Leake v. Robinson, 2 Mer. 392: "Everything which is ill given by the will does fall into the residue; and it must be a very peculiar case indeed, in which there can be at once a residuary clause and a partial intestacy, unless some part of the residue itself be ill given." The leading English case is, perhaps, Skrymsher v. Northcote, 1 Swanst. 566, holding that a lapsed portion of a residuary bequest went to the next of kin, and not to the residuary legatees, on the ground that the latter were given specific portions of the residuum, and could not take more by the intent of the will, and receiving the bequest in common and not jointly,

there could be no increase by survivorship. The rule is in effect approved in 1 Jarman on Wills, page 764, and Redfield in his work on Wills (2 Ed.) vol. 3, p. 119, says that the doctrine ''having been once established, upon grounds however uncertain, it should not now be disregarded, unless upon some satisfactory grounds arising out of the context of the will, or the extrinsic proof of circumstances proper to be received in aid of the construction.'' The ''grounds however uncertain'' upon which this doctrine rests are thus discussed by the latter author: ''It is not very apparent how the above reasoning may not apply with equal force to a gift of a residue, after particular legacies, which is really rendered as definite, by deducting the prior legacies, as if it had been expressed, as one-half, or one-eighth, or any definite proportion of the estate. And to adopt the principle that if all the particular legacies lapse, the residuary clause shall carry the whole estate, involves the same departure from the expressed intention of the testator, as where the residuary clause is divided into moieties, and one of them fails, to let it go to the other. But this distinction is based upon a presumed intention of the testator to give his whole estate to the residuary legatee, except as it shall be cut down by the deductions necessary to meet the particular legacies. But in regard to the residuary bequests, where it is divided into distinct portions, no such presumption, as to increasing the several portions by the failure of the others, can so directly arise.''

We do not find that the above rule has ever been adopted in Missouri, and it is not deemed necessary or expedient to adopt it in that case, but the reasons and distinctions suggested as underlying the rule are illuminating. In this case the testator's experience, foresight and business acumen no doubt suggested the probability that some shares in the residuary estate would be defeated by the death of beneficiaries leaving no surviving wife or husband or living children, but he made no provision to meet such contingencies. He might easily have done so, but he did not. It may be said that his general intention to die testate, disclosed by the will as a whole, indicates an intention that any defeated share should go to the surviving residuary legatees. However, he not only failed to so provide, but he assigned to each residuary legatee a specific aliquot part, which is inconsistent with an intention to augment the shares of the surviving legatees. The light of testator's intention thus fails as to defeated shares in the residuary estate, and we must look to the Statute of Descents and Distributions. The trial court properly held that defeated shares in the residuary estate go to the next of kin.

In the cross-appeal of E. D. Plummer et al. the judgment is reversed and cause remanded with directions that judgment be entered as rendered by the trial court except that the property referred to in

paragraph 11 of the will be held to be a part of testator's residuary estate in accordance with our finding. In the cross-appeal of Estelle Brown et al. the judgment is affirmed.

All concur, except *Graves, J.*, absent.